STATE of Tennessee, Appellee,

v.

Loshie Pitts HARRINGTON, Appellant.

Supreme Court of Tennessee.

December 28, 1981.

Jerry V. Smith and Nathan T. Brown, Dickson, for appellant.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

COOPER, Justice.

This case is before us on appeal by Loshie Pitts Harrington from judgments entered in the Criminal Court of Dickson, Tennessee. See T.C.A. § 39–2406. Specifically, the judgments approved the jury's verdicts (1) finding appellant guilty of assault with intent to commit murder in the first degree and fixing his punishment at not less than six (6) nor more than twenty-one (21) years in the state penitentiary, and (2) finding appellant guilty of murder in the first degree and fixing his punishment at death by electrocution. Appellant has presented eighteen assignments of error, seventeen of them being directed primarily to the conviction of first degree murder and sentence of death. The other assignment challenges the sufficiency of evidence to support the conviction of assault with intent to commit murder in the first degree. We find no

merit in the latter insistence, nor do we find any merit in the several assignments of error relating to the guilt phase of the trial of appellant for first degree murder. We are of the opinion, however, that two issues relating to the sentencing phase of the trial—the exclusion for cause of jurors who expressed reservations toward the imposition of the death penalty and the consideration by jurors of material other than that introduced in evidence—require a reversal of the penalty of death and a remand of the cause for a sentencing hearing.

Preliminarily to trial, appellant sought to have the trial judge dismiss the several indictments against him on the ground the indictments show the witnesses were sworn on a day other than the day the grand jury was in special session. On consideration of the motion, the grand jury report, and an affidavit filed by the state, the trial judge found that the witnesses listed on the indictments took the oath and testified on the day the grand jury returned the indictments against appellant. The trial judge then overruled the motion to dismiss and ordered the indictments to be amended to show the true date the witnesses appeared before the grand jury. We see no error in the trial judge's action. There is no statutory requirement that the date witnesses were sworn must appear on an indictment. All that is required is that the names of the witnesses be inscribed on the indictment, and even the failure to perform that act does not invalidate the indictment. See T.C.A. § 40–1708. Furthermore, the trial court cured any possible defect in the indictment by ordering the amendment to reflect the correct date witnesses were sworn. This action did not affect any substantial right of the appellant and was taken before jeopardy attached. See Rule 7(b), Tennessee Rules of Criminal Procedure.

The crimes for which appellant stands convicted were committed on August 27, 1979. On that day, at about 5:00 p. m., appellant went to the used car lot owned and operated by Charles Caroland. When appellant arrived, he found Caroland and

two of Caroland's friends—Leonard Hembree and Alver Jones—sitting in chairs outside the used car lot office. Appellant inquired of Caroland which automobile on the lot was the cheapest. At that point, Hembree left. Appellant then moved toward the Pinto automobile indicated by Caroland. When he reached a point some eight to ten feet in front of Caroland and Jones, appellant turned, squatted and pointed a gun at the two men, demanding that they put their money, watches, billfolds and rings in a sack appellant had brought with him for that purpose. Caroland complied with the request. As he tossed the sack back to appellant, Caroland saw that Jones who was a bonded deputy sheriff, had drawn a weapon. Ironically, the weapon was an automatic and could not be fired immediately as there was no bullet in the chamber. Almost simultaneously with the drawing of Jones' weapon, appellant fired several shots at Jones. Caroland began running toward the rear of his office building and had reached the back corner when he was shot in the backside of his hip and leg and knocked to the ground. Caroland regained his feet and fled toward his house some 200 to 250 feet away. Appellant chased after Caroland and fired at least two more shots, before leaving the crime scene in an automobile driven by a woman subsequently identified as Cynthia Smith.

An examination of Jones at the crime scene disclosed that he had sustained multiple gunshot wounds and was dead. The medical examiner testified that the gunshot wounds were the cause of Jones' death. He further testified that Jones had sustained no frontal wounds, that of the six bullets fired into Jones' body, three travelled from left to right and three entered from the back.

In the course of its investigation of the murder and robbery, the Sheriff's Department learned that appellant recently had purchased a .22 caliber automatic weapon and had fired the gun numerous times at targets to improve his proficiency with the weapon. On the night of August 26, 1979, appellant informed friends that he and Cynthia Smith were going to California.

When asked where he was going to get the money for the trip, appellant told his friends he didn't care if he had to lie, kill, or steal to get it.

Appellant and Ms. Smith were taken into police custody in Kingman, Arizona, on August 31, 1979. At the time, they were sleeping in the automobile used in the robbery.

At trial both Hembree and Caroland identified appellant as the person who came to Caroland's used car lot on the afternoon of August 27, 1979. Caroland went on to testify that appellant was the person who robbed and shot him, and who fired numerous shots at Jones.

The jury concluded that appellant, in killing Alver Jones, was guilty of "murder in the perpetration of robbery," which is murder in the first degree. The jury also found that appellant was guilty of an assault on Charles Caroland with intent to commit murder in the first degree.

 In his assignments of error, appellant questions the sufficiency of evidence of guilt of murder in the first degree, but does not argue the issue with any force, either in his brief or in oral argument before the court. He does insist, however, that there is no evidence that appellant is guilty of assault with intent to murder Charles Caroland, that appellant's intent was not to murder Mr. Caroland but only to rob him. We see no merit in this argument. Appellant armed himself with a deadly weapon before he went to the used car lot. After having taken Caroland's money and jewelry at gun point and Caroland was fleeing the scene and was no immediate threat to appellant, appellant fired his weapon and wounded Caroland. Even more importantly, as Caroland continued to flee from appellant, appellant followed and fired more shots at Caroland. We think this evidence justifies a jury concluding that whatever appellant intended when he went to the used car lot, he decided to and did attempt to kill Caroland. Further, we are of the opinion that the circumstances justify a finding of the necessary premeditation and

deliberation on the part of the appellant so as to make the attempt on Caroland's life an assault to commit murder in the first degree. *See Edwards v. State,* 221 Tenn. 60, 424 S.W.2d 783, 785 (1968). Premeditation is a question of fact to be determined from all the circumstances attendant the commission of the crime. *State v. LaChance,* 524 S.W.2d 933, 937 (Tenn.1975). A circumstance from which the inference of premeditation may be drawn is repeated shots at a victim. *State v. Bullington,* 532 S.W.2d 556 (Tenn.1976). We are also of the opinion that the evidence set forth above justifies the jury finding beyond a reasonable doubt that appellant was guilty of murder in the first degree in the perpetration of a robbery in the killing of Alver Jones.

In three assignments of error, appellant questions the rulings by the trial court as to the admissibility of evidence in the guilt phase of the trial. Appellant insists the trial court erred in permitting the state to use a lifesize mannequin to demonstrate the paths of the bullets through the victim's body. Appellant argues that since the state was proceeding on the theory of felony murder, there was no probative value in showing the paths of the bullets. Appellant also insists that the use of the mannequin was inflammatory. We see no merit in either argument. Unlike many photographs of a corpse in homicide cases, the mannequin evidence was not of a gruesome character, nor was it of a type that would give the jury an inaccurate or misleading view of evidence. To the contrary, testimony as to the cause of Jones' death was clarified by the use of the mannequin. The medical evidence was to the effect that death did not result from any one of the six shots inflicted, but was caused by a combination of shots. The paths of the several bullets then became relevant on the issue of the cause of death.

The appellant contends that the trial judge erred in asking a witness a question that elicited an improper hearsay answer. We see no basic error in the trial judge's action. His question was the same as that previously asked by the district at-torney general without any objection being made by counsel for appellant. When no objection to testimony is interposed, it may properly be considered and given its natural probative effect as if it were in law admissible. *State v. Bennett,* 549 S.W.2d 949, 950 (Tenn.1977). But, more importantly, the response of the witness to the question could not have affected the results of the trial, since it related to a conversation that occurred several days before the crimes were committed, and there is no question under the proof but that appellant killed Alver Jones in the course of a robbery.

Appellant insists the trial judge erred in permitting the state to reopen its case and introduce in evidence a photograph of the appellant taken at the time of his arrest in Arizona. The action complained of occurred prior to appellant moving for a judgment of acquittal or opening his defense. Prejudice then could not result from the reopening of the state's case, nor from the introduction of the photograph.

Appellant also takes issue with the jury argument of the prosecutor in the guilt phase of the trial, insisting that the prosecutor improperly commented on appellant's decision not to testify, and that he argued matters not supported by the record. We find no basis in the record for either contention.

The record shows that at the close of proof, the state elected to proceed against appellant under count two (the felony murder count) of the murder indictment. Appellant contends that this action was improper, that it was taken without his consent contrary to Rule 48(a) of the Tennessee Rules of Criminal Procedure, and that it was prejudicial in that it removed the possibility of appellant's arguing self defense.

Rule 48(a) deals only with the dismissal of an indictment, presentment, information or complaint. The state did not dismiss the murder charge against appellant, but elected to proceed under the count of the indictment that charged the highest degree of murder and which conformed with the proof. This is the state's prerogative in any case.

In the assignments directed to the sentencing phase of the trial, appellant has mounted the usual challenge to the constitutionality of the Tennessee Death Penalty Act. However, none of the bases for the challenge presents any issue not heretofore decided by the court. The contentions now made with respect to the use of hearsay evidence in the sentencing hearing, and that the imposition of the death sentence is cruel and inhuman treatment were considered and rejected in *Houston v. State,* 593 S.W.2d 267 (Tenn.1980), cert. denied, 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117 (1980). *See also State v. Dicks,* 615 S.W.2d 126 (Tenn.1981). The contention that the statute impermissibly prohibits the jury from being informed of the consequences of its failure to reach a unanimous verdict at the sentencing phase of the trial also was considered and rejected in *Houston v. State, supra,* and in *State v. Pritchett,* decided on August 3, 1981.

In a separate assignment, appellant insists his constitutional rights were violated when jurors were excused for cause on voicing general objections to the death penalty or on expressing conscientious or religious scruples against its infliction. *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and its progeny [1] establish the general proposition "that a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980). Where veniremen are excluded on "any broader basis ... the death sentence cannot be carried out even if applicable statutory or case law in the relevant jurisdiction would appear to support only a narrower ground of exclusion." *Witherspoon v. Illinois, supra,* at 522 n. 21, 88 S.Ct. at 1776 n. 21.

The determining factor in deciding whether or not the exclusion of prospective jurors based upon opposition to the death penalty violates the *Witherspoon* doctrine generally seems to be the precise nature of the language used in the voir dire questioning and the jurors' replies. Where the exclusion of veniremen is based upon a state statute which involves the systematic exclusion of all who indicate the possession of conscientious or religious scruples against the death penalty, as occurred in *Witherspoon,* the courts have set aside death sentences. *See e.g. Spencer v. Beto,* 398 F.2d 500 (CA5, Tex.1968); *Williams v. Dutton,* 400 F.2d 797 (CA5, Ga.1968). In the recent case of *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), the Supreme Court held violative of the *Witherspoon* standard a Texas statute which required the disqualification of any juror in a capital case who did not state under oath "that the mandatory penalty of death or life imprisonment will not affect his deliberations on any issue of fact." Tex. Penal Code Ann. § 12.31(b). The Court characterized *Witherspoon* as a "limitation on the State's power to exclude" and concluded that § 12.31(b) was constitutionally defective since it resulted in the exclusion of prospective jurors on a broader basis than inability to follow the law and fairly and impartially decide the case.

■ In the instant case we find that several jurors were excused for cause on the basis of answers to general questions asked on voir dire, which did no more than elicit the fact that a juror did not believe in capital punishment or had some conscientious or religious scruples against its infliction. For example, the juror Iva Dell Braton was excused for cause after the following examination by the court:

"Q. Do you have any personal knowledge about the facts of the case?

A. No I don't.

Q. Have you heard or read anything about it?

A. I've heard about it.

1. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Davis v. Georgia,* 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976);

*Maxwell v. Bishop,* 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970); *Boulden v. Holman,* 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969).

Q. Have you formed or expressed any opinion as to guilt or innocence of the defendant?

A. No, I haven't.

Q. Are you related to the defendant, or any of the other people I've mentioned—

A. No.

Q. —in any way?

A. No, I'm not.

Q. Do you know of any reason why you could not sit on this case, and be a completely fair and impartial juror?

A. No, I don't.

Q. Now, the first degree murder charge carries, upon conviction, a penalty of either life imprisonment or death by electrocution.

If you thought the facts justified it in a particular case, could you consider the full range of punishment?

A. On the death penalty, I don't believe in that.

Q. All right. Would you impose the death penalty in any case?

A. I don't believe in that.

THE COURT: All right. Step down. You may be excused."

The statements of this juror in our opinion do not show that she is irrevocably opposed to the imposition of the death penalty, no matter what the evidence might show at trial or that she could not make an impartial decision as to appellant's guilt. It does show unequivocally that she does not believe in the death penalty, but this is not the *Witherspoon* standard. *See Boulden v. Holman*, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969), wherein the Supreme Court vacated the death sentence imposed by the jury, where jurors who had a "fixed opinion against" or did not "believe in" capital punishment were excused for cause under an Alabama statute which authorized exclusion of potential jurors in capital cases if the person "has a fixed opinion against capital punishment." The Court held it entirely possible that such a juror might nevertheless be able to abide by existing law, and conscientiously follow the instruc-

tions of the trial judge and consider fairly the imposition of the death sentence in a particular case. *Boulden v. Holman* at 1142. *Accord, Maxwell v. Bishop*, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970), where the Court struck down the death sentence where veniremen had been excused for conscientious scruples about imposing the death penalty or for not believing in it. *Witherspoon* requires that no juror be excluded for cause from a capital case because of the juror's opposition to the death penalty unless the juror unambiguously admits that he would automatically vote against imposition of the death penalty, no matter what the circumstances of the case were. If even one venireman is excluded from the jury on grounds at variance with the *Witherspoon* standard, then a death sentence imposed by the jury cannot stand. *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976). This is so even if other jurors opposed in principle to the death penalty were not excused for cause, and even if the record is completely void of any evidence of a systematic and intentional exclusion of a qualified group of jurors.

The trial court having erroneously excluded jurors for cause in violation of the *Witherspoon* standard, we have no alternative but to reverse the sentence of death and remand the cause to the trial court for a sentencing hearing. *See Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976); *Maxwell v. Bishop*, 398 U.S. 262, 90 S.Ct. 578, 26 L.Ed.2d 221 (1970); *Boulden v. Holman*, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969).

█ Appellant also has called our attention to the fact that during deliberations in the sentencing phase of the trial, the jury foreman buttressed his argument for imposition of the death penalty by reading to the jury selected biblical passages. His action, of course, was error which would have required a new sentencing hearing absent the error in excluding jurors for cause in violation of the *Witherspoon* standard.

The judgment of the trial court on appellant's conviction for assault with intent to

commit murder in the first degree is affirmed. The conviction of appellant for murder in the first degree is affirmed. The sentence of death imposed on the murder conviction is reversed, and the cause is remanded to the trial court for a sentencing hearing. Costs incident to the appeal are adjudged against the appellee; all other costs will be assessed in the trial court.

HARBISON, C. J., FONES and DROWOTA, JJ., concur.

BROCK, J., dissents and concurs.

BROCK, Justice, concurring in part; dissenting in part.

For the reasons set out in my dissenting opinion in *State v. Dicks*, Tenn., 615 S.W.2d 126 (1981), I would hold that the death penalty is unconstitutional; in all other respects I concur in the Court's majority opinion.