IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 2000 Session

## STATE OF TENNESSEE v. HELEN I. CUMBERBATCH

**Appeal from the Criminal Court for Hamilton County**
**No. 21683     Rebecca J. Stern, Judge**

_____

**No. E2000-00047-CCA-R3-CD**
**September 8, 2000**
_____

The Defendant appeals as of right from the trial court's revocation of her community corrections sentence. She argues that the trial court erred in revoking her community corrections sentence based on unreliable, undocumented hearsay evidence that she had failed a drug screen. The State asserts that the Defendant has waived appellate review of the admission of the hearsay evidence because she failed to object at the hearing. We hold that the trial judge properly considered the hearsay evidence, and she did not abuse her discretion in revoking community corrections because the evidence was sufficient to establish by a preponderance of the evidence that the Defendant had violated the conditions of community corrections by using cocaine. Accordingly, we affirm the judgment of the trial court revoking the Defendant's community corrections sentence.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ROBERT W. WEDEMEYER, JJ., joined.

Ardena J. Garth, District Public Defender; Donna Robinson Miller, Assistant District Public Defender, for the appellant, Helen I. Cumberbatch.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Bill Cox; District Attorney General, and Yolanda D. Mitchell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On September 29, 1998, the Defendant, Helen I. Cumberbatch, pleaded guilty in Hamilton County to theft in an amount over $1,000.00. She received a four-year sentence to be served on probation, and she was ordered to pay restitution and to submit to random drug screens. As a result of failed drug screens, the Defendant's probation was revoked on June 14, 1999, and she was ordered to serve her sentence in the Hamilton County Community Corrections Program. She remained subject to random drug screens. On October 5, 1999, the community corrections program filed a "Request for Capias," alleging that the Defendant had failed a drug screen on September 30, 1999.

The community corrections officer, Brayton Floyd, requested that the court either incarcerate the Defendant for thirty to sixty days and then require drug treatment upon release or remove the Defendant from the community corrections program.

On December 13, 1999, a hearing was held to determine whether the Defendant's community corrections sentence should be revoked. The only witness was Brayton Floyd, the Defendant's community corrections officer. He testified that the program administered four random drug screens to the Defendant between June 14, 1999 and September 30, 1999, and all four screens were returned negative for drug use. However, on September 30, 1999, the program again administered a drug screen, which "was returned positive for cocaine use." This testimony was the only evidence of any drug use by the Defendant. The Defendant did not object to the testimony or challenge this evidence in any way. Mr. Floyd further testified that the Defendant had not been charged with any new offenses, that she had not violated curfew, that she was paying restitution, and that she had maintained full-time employment. The State then requested that the court revoke the Defendant's community corrections sentence and require her to serve her sentence in confinement. The defense attorney stated that the Defendant "obviously has a drug problem" and requested a period of shock incarceration and then release again into the community corrections program. After hearing the evidence, the trial court found that the Defendant had violated the conditions of her community corrections sentence and revoked that sentence. The Defendant now argues that the revocation was error.

The trial court has the discretion to revoke a community corrections sentence upon finding by a preponderance of the evidence that the defendant has violated the conditions of the agreement; the trial court may then order the defendant to serve his or her sentence in confinement. State v. Harkins, 811 S.W.2d 79, 82-83 (Tenn. 1991). However, before a trial court may revoke a community corrections sentence, the record must contain sufficient evidence to permit the trial court to make an intelligent and conscientious decision. Id. When revoking a community corrections sentence, the trial court must place its findings of fact and the reasons for the revocation on the record. See Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973).

The Tennessee Supreme Court has held that an abuse of discretion standard of appellate review should be used to consider an appeal from the revocation of a community corrections sentence. Harkins, 811 S.W.2d at 82-83. In order for a reviewing court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that the defendant violated the terms of the community corrections program. Id. The proof of a violation of community corrections need not be established beyond a reasonable doubt, and it is sufficient if it allows the trial judge to make a conscientious and intelligent decision. Id.; State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984).

If the evidence at the revocation proceeding is insufficient to establish that a violation occurred, the trial court should dismiss the proceeding. Conversely, if the evidence is sufficient, the trial court may, within its discretionary authority, revoke the sentence and require the accused to serve the sentence in confinement. See Tenn. Code Ann. § 40-36-106(e)(3).

We conclude that the evidence was sufficient to establish by a preponderance of the evidence that the Defendant was in violation of the conditions of her community corrections sentence due to drug use. Mr. Floyd testified that the Defendant had failed a drug screen by testing positive for cocaine use, and the Defendant did not object or in any way challenge that testimony. In fact, the Defendant's attorney stated to the court, "Ms. Cumberbatch obviously has a drug problem," thereby apparently conceding that the Defendant had used drugs. We cannot conclude from this record that the revocation of community corrections was an abuse of discretion.

The Defendant, however, argues that the trial court erred by relying on the hearsay testimony of Mr. Floyd that she had failed a drug screen. She relies on State v. Wade, 863 S.W.2d 406 (Tenn. 1993), in which the admission of a drug screen report was challenged as a violation of the right to confront and cross-examine witnesses. In Wade, a drug screen report was entered into evidence over the defendant's objection. Id. at 407. The State did not call the laboratory technician who performed the test and prepared the report. Id. Both the defendant and his wife testified that the defendant had not used illegal drugs but that he had been taking Advil, which could have caused false results. Id. Relying solely on the drug screen report, the trial court revoked the defendant's probation. Id. The supreme court found that the admission of the report, which was clearly hearsay, violated the defendant's due process rights because there was no evidence that it was reliable and because the trial court did not find "good cause" to justify the failure to call the technician and have him or her available for cross-examination. Id. at 409-10. The court also noted that the validity of the report was put at issue by the testimony of the defendant and his wife that he had not used illegal drugs. Id. at 409. It then held that "the State is not entitled to revoke probation based on an unidentified laboratory test admitted into evidence without a finding of good cause and proof of the reliability of the test report." Id. at 410; see also State v. Gregory, 946 S.W.2d 829, 831 (Tenn. Crim. App. 1997); State v. Anthen Lee Parker, No. 02C01-9111-CC-00245, 1994 WL 34632, at * 1 (Tenn. Crim. App., Jackson, Feb. 9, 1994).

Had the Defendant challenged the results of the drug screen at the revocation hearing, this issue would be presented in a different light. However, we find Wade to be inapplicable to the facts of this case. Here, unlike in Wade, the Defendant never objected to the hearsay testimony of Mr. Floyd. Here, unlike in Wade, the Defendant never put the validity of Mr. Floyd's testimony at issue. Indeed, the Defendant conceded through her attorney that she had used illegal drugs. As a general rule, "[w]hen no objection to [hearsay] testimony is interposed, it may properly be considered and given its natural probative effect as if it were in law admissible." State v. Harrington, 627 S.W.2d 345, 348 (Tenn. 1981). Rule 36(a) of the Tennessee Rules of Appellate Procedure likewise provides: "Nothing in this rule shall be construed as requiring relief to be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Failure to make a contemporaneous objection waives consideration by this Court of the issue on appeal. See id.; State v. Killebrew, 760, S.W.2d 228, 235 (Tenn. Crim. App. 1988). Thus, the Defendant cannot now complain of the admissibility and reliability of the hearsay testimony of Mr. Floyd when she did not challenge it below and when she conceded that she had a problem with drugs. The trial court properly considered the testimony of Mr. Floyd as substantive evidence that the Defendant failed a drug screen.

Accordingly, the judgment of the trial court revoking the Defendant's community corrections sentence is affirmed.

_____
DAVID H. WELLES, JUDGE