IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 18, 2003

## STATE OF TENNESSEE v. MARC ADOLPH LEWIN

**Direct Appeal from the Circuit Court for Williamson County**
**No. 94-031    Donald P. Harris, Judge**

_____

**No. M2003-00679-CCA-R3-CD - Filed March 22, 2004**

_____

The appellant, Marc Adolph Lewin, pled guilty to obtaining a controlled substance by fraud, for which he received an eight-year suspended sentence. He was ordered to serve eight years of supervised probation with the conditions that the probation be supervised for a minimum of four years, completion of three hundred hours of public service work, and payment of costs on a schedule prepared by a probation officer. After the issuance of a probation violation warrant based on the appellant's failure of a drug screen, the appellant was ordered to serve his sentence in incarceration. He appeals the revocation of probation arguing that the trial court erred by basing its decision on allegations that were not supported by the evidence and an unsubstantiated laboratory report. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, and ROBERT W. WEDEMEYER, JJ., joined.

Dana M. Ausbrooks, Franklin, Tennessee, for the appellant, Marc Adolph Lewin.

Paul G. Summers, Attorney General & Reporter; Braden H. Boucek, Assistant Attorney General; Ron Davis, District Attorney General; and Lee Dryer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

In October of 1998, the appellant was indicted by the Williamson County Grand Jury for obtaining Hydrocodone, a controlled substance, by fraud. The appellant pled guilty and was sentenced by the trial court to an eight-year suspended sentence. He was ordered to serve eight years

of supervised probation with the conditions that the probation be supervised for a minimum of four years, completion of three hundred hours of public service work, and payment of costs on a schedule prepared by a probation officer.

On August 23, 2002, a probation violation warrant was issued against the appellant alleging that he violated probation rule number eight, which states, "I will not use intoxicants of any kind to excess. I will not use or have in possession illegal drugs or marijuana. I will submit to drug screens or drug tests as directed by my Probation/Parole Officer." The affidavit submitted by Connie Martin, the probation officer who issued the warrant, alleged that the appellant tested positive for morphine and barbituates in a July 30, 2002 drug screen.

The trial court held a hearing on the probation violation warrant. Jean Lane, the probation officer responsible for monitoring the appellant, testified that she has supervised the appellant since his service of four months for revocation from Community Corrections for a technical violation, in approximately June of 2001. She testified that the current probation violation warrant would amount to the appellant's third violation of probation. Ms. Lane testified that she explained the expectations and rules of probation to him and that he signed documents indicating his understanding of the rules of probation.

On July 30, 2002, Ms. Lane ordered the appellant to submit to a drug screen through a urine test as required by the rules of his probation. Ms. Lane tested for morphine and phenobarbital. After obtaining a positive field test, Ms. Lane sent the sample for further testing to Aegis Laboratory. The results obtained from Aegis confirmed that the appellant had phenobarbital, hydromorphone, hydrocodeine, and dihydrocodeine in his system. Ms. Lane did not consider the presence of phenobarbital as a violation of the appellant's probation because he produced a legitimate prescription for the phenobarbital. The affidavit from Aegis indicated that the levels of drugs in the appellant's system were consistent with hydrocodone use within three days and phenobarbital use within five days. The affidavit and results from Aegis were identified by Ms. Lane and admitted into evidence by the trial court without objection from the appellant.

Ms. Lane testified that she questioned the appellant about the positive drug screen. The appellant explained to her that he had injured his hand in a motorcycle accident and was taking medication prescribed by a doctor. He also claimed that he injured his other hand at work approximately one month prior to the drug screen. He specified that he was prescribed hydrocodone for the injuries sustained in the motorcycle accident and that he had taken the last pill on July 26. The appellant produced documentation in the form of medical records to corroborate his claims which indicated that he visited both Maury County Hospital on June 12, 2002, for the motorcycle accident and the Bone & Joint Clinic on June 13, 2002, for the job injury. At that time, he did not produce a prescription or pill bottle for medication that he claimed was prescribed for his injuries, but claimed that a doctor gave him a prescription for hydrocodeine and that he took the last pill on July 26, 2002, four days prior to the drug screen.

On cross-examination, Ms. Lane admitted that there is no rule of probation that requires the appellant to furnish a copy of a prescription for a legally obtained prescription drug. However, she testified that she instructed the appellant to promptly inform her of any information relating to doctor visits.

On the day of the probation revocation hearing, the appellant submitted documentation purporting to be a prescription from June of 2002 for hydrocodone which included one refill. The prescription was written on a prescription pad from the Bone & Joint Clinic, one of the places where the appellant sought treatment for his hand injuries. Ms. Lane admitted that had she seen the prescription, she may not have violated the appellant's probation.

The appellant called James Derryberry, a Church of Christ minister and his cousin, to testify on his behalf. Mr. Derryberry testified that the appellant got a job soon after attending Place of Hope, a drug and alcohol rehabilitation center and that the appellant volunteered at church, loved his family, and loved his children. Mr. Derryberry agreed to assist the appellant if he was placed on probation.

The trial court, after hearing the evidence, determined that the prescription submitted by the appellant on the day of the hearing had absolutely no evidentiary value, as there was no physician present to corroborate its validity. Specifically, the trial court dubbed the prescription "fabricated." The trial court found that the appellant was unlikely to be receptive to anything less than incarceration due to his past failures at alternative sentences. The trial court ultimately determined that the appellant had taken illegal drugs and ordered the appellant's probation revoked. The appellant was ordered to serve his original sentence of eight years.

Analysis

On appeal, the appellant argues that the trial court erred in revoking his probation based on an unsubstantiated laboratory report and that the trial court abused its discretion by basing its decision on allegations that were not supported by the evidence. The State counters that because the appellant did not object to the introduction of the laboratory result at the hearing, he waived his challenged to the validity of the report. Further, the State argues that the trial court did not abuse its discretion by revoking the appellant's probation.

Specifically, the appellant first contends that the State failed either to present the technicians who prepared the drug analysis or show good cause why such persons did not testify, and did not provide any testimony on the types of tests used or the test's reliability as required by State v. Wade, 863 S.W.2d 406 (Tenn. 1993). Accordingly, the appellant asks this Court to reverse the revocation of his probation.

In Wade, the Tennessee Supreme Court held that a criminal defendant's confrontation rights under the Sixth Amendment to the United States Constitution and Art. 1, § 9 of the Tennessee Constitution are violated when his probation is revoked solely upon the basis of an unidentified

laboratory report, without a showing of good cause as to why the technician preparing the report did not personally appear at the hearing and without proof as to the reliability of the report. Id. at 409; see also State v. Ricker, 875 S.W.2d 687 (Tenn. Crim. App. 1994). In this instance, the appellant's probation officer testified that she administered a drug screen to the appellant and forwarded the screen to Aegis for analysis. The laboratory report indicates that the screen tested positive for phenobarbital, dihydrocodeine, hydrocodeine, and hydromorphone.

Subsequent to our supreme court's decision in Wade, in State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997), this Court concluded that an affidavit and laboratory report were admissible in the absence of a witness testifying as to the test results when the affidavit, unlike that in Wade, noted that the expense of having the out-of-town witness attend court was prohibitive, identified the person certifying the drug test and stated his qualifications; specifically described the method of testing and stated that it was the most accurate method for identifying the particular type of drug which was found; certified that the results of the test were accurate and reliable; and declared that established procedures and protocols were followed in the testing process. This Court noted that the cost of procuring the appearance of the out-of-state laboratory technician constituted good cause for his absence and thus found that the requirements of Wade had been satisfied. Id. at 832. In 1998, Tennessee Code Annotated section 40-35-311 was amended to add the following section regarding admission of a laboratory report at a probation revocation proceeding:

> A laboratory report regarding a defendant's drug test may be admissible in probation revocation proceedings, even though the laboratory technician who performed the test is not present to testify, when accompanied by an affidavit containing at least the following information:
> (A) The identity of the certifying technician;
> (B) A statement of qualifications from the certifying technician;
> (C) A specific description of the testing methodology;
> (D) A statement that the method of testing was the most accurate test for this particular drug;
> (E) A certification that the test results were reliable and accurate;
> (F) A declaration that all established procedures and protocols were followed; and
> (G) A statement of acknowledgment that submission of false information in the affidavit may subject the affiant to prosecution for the criminal offense of perjury pursuant to § 39-16-702.

Tenn. Code Ann. § 40-35-311(c)(1). The laboratory report introduced herein was accompanied by an affidavit containing all of the requirements of Tennessee Code Annotated section 40-35-311(c)(1). Thus, any hearsay concerns with respect to the admission of the laboratory results are satisfied. However, there was no testimony at the hearing which would establish "good cause" for the absence of the technician as required by Wade thereby alleviating the concern over the violation of the appellant's confrontation rights. Nonetheless, we find that the report was properly admitted into evidence due to the appellant's failure to challenge the results of the drug screen at the

revocation hearing.  Here, unlike in Wade, the appellant never objected to the hearsay testimony of Ms. Lane and never put the validity of Ms. Lane's testimony at issue.

As a general rule, "[w]hen no objection to [hearsay] testimony is interposed, it may properly be considered and given its natural probative effect as if it were in law admissible."  State v. Harrington, 627 S.W.2d 345, 348 (Tenn. 1981); see also State v. Smith, 24 S.W.3d 274, 279-80 (Tenn. 2000).  Rule 36(a) of the Tennessee Rules of Appellate Procedure likewise provides: "Nothing in this rule shall be construed as requiring relief to be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."  Failure to make a contemporaneous objection waives consideration by this Court of the issue on appeal.  See id.; State v. Killebrew, 760, S.W.2d 228, 235 (Tenn. Crim. App. 1988).  Thus, the appellant cannot now complain of the admissibility and reliability of the hearsay testimony of Ms. Lane when he did not challenge it below.  Therefore, we conclude that the trial court properly considered the testimony of Ms. Lane and the accompanying lab report from Aegis as substantive evidence that the appellant failed a drug screen.

Secondly, the appellant asserts that the trial court abused its discretion by finding the appellant violated the terms of probation by using illegal drugs because the decision to revoke the appellant's probation was based on "allegations that were not supported by the evidence." Specifically, the appellant contends that because he had a prescription for hydrocodone, he was not in violation of his probation.  The State argues that the trial court did not abuse its discretion and that the evidence supported the trial court's decision to revoke the appellant's probation.

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation.  Tenn. Code Ann. §§ 40-35-310, -311.  The decision to revoke probation rests within the sound discretion of the trial court.  State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).  Revocation of probation and a community corrections sentence is subject to an abuse of discretion standard of review, rather than a de novo standard.  State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991).  An abuse of discretion is shown if the record is devoid of substantial evidence to support the conclusion that a violation of probation has occurred.  Id.  The evidence at the revocation hearing need only show that the trial court exercised a conscientious and intelligent judgment in making its decision.  State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).  Further, "[i]t is well established that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion."  State v. McLeod, 937 S.W.2d 867, 871 (Tenn. 1996).  The prescription offered into evidence by the appellant was conceivably hearsay, as it was offered for the truth of the matter implicitly asserted therein, i.e. that the failure to pass the drug screen was from having ingested pills obtained from the proffered prescription form. See Neil P. Cohen, et al., Tennessee Law of Evidence, (4th ed. 2000) § 8.01 [4](f) (concerning implicit assertions as hearsay).  Moreover, there is nothing in the record to indicate that the alleged prescription was properly authenticated under Tenn. R. Evid. 901.  Under these circumstances we cannot say the trial court abused its discretion in declining to consider the alleged prescription proffered by the appellant.

Finally, the appellant submits that the trial court was "prejudiced and biased" because it considered its history with the appellant. The record contained the pre-sentence report, which chronicled the appellant's long history of criminal behavior. When deciding whether to incarcerate a defendant, trial courts are statutorily obligated to consider whether measures less restrictive than confinement have been unsuccessfully been applied to the defendant. See Tenn. Code Ann. § 40-35-103. While the trial court commented on the appellant's past failures and convictions for similar crimes when determining whether to revoke the appellant's probation, we cannot conclude that the trial court erred in doing so.

## Conclusion

After a thorough review of the record, we find no reversible error, and thus affirm the decision of the trial court revoking the appellant's probation.

_____
JERRY L. SMITH, JUDGE