FILED

06/05/2017

Clerk of the
Appellate Courts



IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 26, 2017

**STATE OF TENNESSEE v. TERRY TRAMMELL**

**Appeal from the Criminal Court for Knox County**
**No. 106956     G. Scott Green, Judge**

_____

**No.  E2016-01725-CCA-R3-CD**
_____

The Defendant, Terry Trammell, was convicted by a Knox County Criminal Court jury of two counts of burglary, a Class D felony, and two counts of theft of property, a Class E felony.  *See* T.C.A. §§ 39-14-402 (2014) (burglary), 39-14-103 (2014) (theft).  The trial court merged the burglary and theft convictions and sentenced the Defendant to concurrent terms of twelve years for the burglary conviction and six years for the theft conviction, which were ordered to be served consecutively to a previously imposed sentence.  On appeal, the Defendant contends that the evidence is insufficient to support his convictions.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ. joined.

Nicholas W. Lee, Knoxville, Tennessee, for the appellant, Terry Trammell.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Charme P. Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arises from a July 2015 burglary of Rodem Process Equipment (Rodem) in which a conference room television was stolen at night.  At the trial, Bridger Yancey testified that he worked for Rodem, which distributed stainless steel valves and parts to businesses.  He said that the majority of Rodem's customers placed orders on the telephone and that Rodem was located in a "strip type office" building.

Mr. Yancey testified that on July 8, 2015, Rodem had a television inside the conference room in the rear of the building. He said that Rodem closed at 8:00 p.m. and that it opened at 8:00 a.m. on July 9, 2015. He said that when he arrived on July 9, the office suite was warm, that a rear window was broken, that glass shards from the broken window were everywhere, and that the conference room television was missing.

Mr. Yancey testified that he provided the television's serial number to the responding police officers, that the television was later found at a pawn shop, and that he provided the television's paperwork to the police and to the pawn shop employee in order to have the television returned. Mr. Yancey said that Rodem's corporate office maintained serial number records of the office equipment and that initially the corporate records showed that the television was shipped to the Burford, Georgia office, rather than the Knoxville office. He said that it was a data entry error and that the proper number was provided to the police. He said that the television was valued at more than $500 and that the Defendant did not have permission to enter the business and to take the television.

On cross-examination, Mr. Yancey testified that he did not know what time the television was taken. He said the conference room was used often, that the room was not used the night of the burglary, and that the door remained open when the room was not used. He said that the television was about one year old, that it was a "flat screen," that it was used for conference calls, and that it had not been damaged. He agreed that his assessment of the television's value was based upon his general knowledge of television costs and that he did not know the cost of the television in this case. He said that he did not see the Defendant in the area before the burglary and that he did not see the Defendant take the television or break into the building.

Amy Zarychta, assistant manager for Cash America Pawn Shop, testified that her company maintained transaction records for seven years and that the records contained the pawn ticket and the signature and thumbprint of the person who pawned an item. She identified a copy of a July 9, 2015 pawn ticket, reflecting the Defendant pawned a forty-inch Samsung television, the television's serial number, and its model number.

On cross-examination, Ms. Zarychta testified that anyone was permitted to pawn an item and that she recalled occasions in which she suspected someone pawned an item for another person. She said that if a person attempted to pawn an item belonging to another person, she advised the person that the owner had to pawn the item. She conceded, though, that sometimes a person "slip[ped] under the radar" and pawned an item not belonging to the person.

Ms. Zarychta testified that she spoke to the Defendant when he pawned the television and that it was slightly damaged when the Defendant pawned it. She said the Defendant received $150.

Knoxville Police Officer Timothy Schade, an expert in latent fingerprint examination, testified that he examined the scene for fingerprints. He that said the rear window was broken, that glass lay outside on the grass and inside the window frame, and that he recovered a fingerprint from the exterior side of a shard of glass in the window frame. He said that he also recovered a "possible shoe print" outside the building on the broken glass. He said it was not unusual to recover only one fingerprint. He said that the fingerprint was ran through the Automated Fingerprint Identification System (AFIS), that AFIS identified the Defendant as a possible match to the fingerprint, and that Officer Schade analyzed the fingerprints and determined the fingerprint recovered from the scene matched the Defendant. Officer Schade identified the Defendant's state identification number, photograph associated with the identification number, and date of birth.

Officer Schade testified that he examined the Defendant's thumbprint from the pawn shop ticket related to the Samsung television, that the thumbprint was entered into AFIS, that AFIS identified the Defendant as a possible match, and that Officer Schade determined that the thumbprint matched the Defendant.

On cross-examination, Officer Schade testified that he looked for fingerprints in the conference room but did not find any. He agreed that the Defendant's fingerprints were not found inside the building and that the Defendant's fingerprint was found outside the building at the point of entry. He did not know when the Defendant's fingerprint was left on the outside of the window.

Knoxville Police Officer Edward Johnson, an expert in latent fingerprint examination, testified that he reviewed the thumbprint from the pawn shop ticket related to the Samsung television. He said that after AFIS reported the Defendant as a possible match, he examined the thumbprint from the ticket and the Defendant's thumbprint from AFIS and determined the thumbprints matched. He said that he provided his conclusions to Officer Schade because policy required fingerprint analyses to be verified by two examiners. On cross-examination, Officer Johnson stated that he did not analyze the fingerprint found at the scene.

Knoxville Police Officer Ron Linkins testified that he obtained the television's serial number and entered the information into the "Leads Online System," which he identified as a database utilized by law enforcement and pawn shops to track pawn shop transactions. He said that pawn shop personnel entered information relative to transactions each business day into the Leads Online System and that he could view the nationwide records.

Officer Linkins testified that he received a report reflecting that the fingerprint from the scene matched the Defendant and that he verified the Defendant's identity by photographs in two law enforcement databases. Officer Linkins said that he searched the Leads Online System for the Defendant's name and learned the Defendant had pawned a

television matching the description of the television taken from the conference room. Officer Linkins said that the Leads Online System report showed the Defendant pawned the television before 10:00 a.m. on the morning the burglary was reported. Officer Linkins said that the serial number in the Leads Online System report and the serial number provided by the victim was "one digit off," that he verified the serial number with the victim, that the victim initially provided an incorrect serial number, and that the victim later provided the proper number. Officer Linkins said that the subsequent serial number provided by the victim matched the serial number reflected in the Leads Online System report.

On cross-examination, Officer Linkins testified that he did not find any witnesses who saw the burglary and that he did not find surveillance recordings showing what occurred during the burglary.

Upon this evidence, the Defendant was convicted of two counts of burglary and two counts of theft of property valued at more than $500 but less than $1,000. This appeal followed.

The Defendant contends that the evidence is insufficient to support his convictions. Although he does not allege the State failed to prove beyond a reasonable doubt the elements of the offenses, he argues the State failed to prove his identity as the perpetrator. In support of his argument, he cites to the State's sole evidence placing him at the scene, a single fingerprint on the outside of the building. He also argues relative to the felony classification of the theft conviction that the State failed to establish the value of the television. The State responds that the evidence is sufficient. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn.

2009)).  A conviction may be based upon circumstantial evidence alone.  *See Dorantes*, 331 S.W.3d at 380-381.

"Identity of the perpetrator is an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006).  Circumstantial evidence alone may be sufficient to establish the perpetrator's identity. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002).  The identity of the perpetrator is a question of fact for the jury to determine. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005).  "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt[.]'" *Rice*, 184 S.W.3d at 662 (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)).

In the light most favorable to the State, the evidence shows that Rodem was closed for business and not open to the public between July 8, 2015, at 8:00 p.m., and July 9, 2015, at 8:00 a.m.  During this time, a rear window was broken to gain entry into the building, and a conference room television was taken without the consent of the owner. The Defendant's fingerprint was found on a glass shard from the broken window, which was the point of entry for the burglary.  The television was found at a pawn shop, and the transaction record reflected the Defendant's name and thumbprint.  The record also reflected the Defendant pawned the television at 9:41 a.m. on the morning the burglary was reported to the police and the television's serial number was identical to the subsequent number provided by Mr. Yancey.  The jury, by its verdict, credited the circumstantial evidence that the Defendant entered the building from the rear window and took the television without consent.  Although no direct evidence showed the Defendant entering the building and taking the television, the jury made a logical determination that the Defendant was the perpetrator based upon the circumstantial evidence of the Defendant's fingerprint at the point of entry into the building and the Defendant's pawning the television less than two hours after the burglary was discovered and reported.  The Defendant is not entitled to relief on this basis.

Tennessee Code Annotated defines value as the fair market value of the property at the time of the offense or the cost of replacing the property within a reasonable time, if the fair market value cannot be ascertained.  T.C.A. § 39-11-106(a)(36)(A) (2014).  The fair market value is a question of fact for the jury. *State v. Hamm*, 611 S.W.2d 826, 828-29 (Tenn. 1981).  "A witness may testify to the value of the witness's own property[.]" Tenn. R. Evid. 701(b).  However, Tennessee Rule of Evidence 701(b) limits lay witness testimony regarding the value of stolen property to the owner, meaning the person who holds title to the property. *State v. Bridgeforth*, 836 S.W.2d 591, 593 (Tenn. Crim. App. 1992).

Mr. Yancey testified that he worked for Rodem, but he was not questioned about his position within the company or about whether he owned the television, although the record reflects that Rodem's corporate office maintained the television records.  In any

event, the record reflects that Mr. Yancey testified the television was valued at more than $500 when questioned by the prosecutor and that the defense did not object to the admissibility of Mr. Yancey's testimony as a lay witness. *See* Tenn. R. Evid. 701(b). To the contrary, the defense attempted to discredit Mr. Yancey's testimony by questioning him about the basis of his value determination. To the extent the Defendant now argues that Mr. Yancey was not qualified to testify regarding the television's value, the defense's failure to object to the introduction of Mr. Yancey's testimony results in waiver of the issue. *See* T.R.A.P. 36(a); *see also* Tenn. R. Evid. 103(a).

Likewise, the failure to object to the admissibility of Mr. Yancey's testimony relative to value rendered his testimony proper proof of the television's value. *See State v. Smith*, 24 S.W.3d 274, 280 (Tenn. 2000) (determining "[w]hen a party does not object to the admissibility of evidence, . . . the evidence becomes admissible notwithstanding any other Rule of Evidence to the contrary, and the jury may consider that evidence for its 'natural probative effects as if it were in law admissible'") (quoting *State v. Harrington*, 627 S.W.2d 345, 348 (Tenn. 1981)); *see also State v. Toscar C. Carpenter, Sr.*, No. M2000-00990-CCA-R3-CD, 2000 WL 1880612, at *3 (Tenn. Crim. App. Dec. 29, 2001); *State v. Bill Wright*, No. 03C01-9203-CR-00087, 1992 WL 386323, at *2 (Tenn. Crim. App. Dec. 29, 1992) (citing *Harrington*, 627 S.W.2d at 348; *State v. Carney*, 752 S.W.2d 513 (Tenn. Crim. App. 1988)).

Mr. Yancey testified that the television was one year old, that it was a flat screen television, that it was used for conference calls, and that it was not damaged before the burglary. Mr. Yancey valued the forty-inch, flat-screen television at more than $500, based upon his general television knowledge. Although Mr. Yancey did not know the purchase price of the television and the Defendant received $150 from the pawn shop, no evidence showed that the purchase price and the amount paid by the pawn shop reflected the fair market value of the television at the time of the offenses. *See State v. Steven Bernard Sydnor*, No. M2007-02393-CCA-R3-CD, 2010 WL 366670, at *20 (Tenn. Crim. App. Feb. 2, 2010) (agreeing with the trial court that jurors are permitted to use their "common sense" in determining the value of stolen goods), *perm. app. denied* (Tenn. June 17, 2010). Viewing this evidence in the light most favorable to the State, we conclude that sufficient evidence was presented to allow the jury to determine the fair market value of the television. The jury could reasonably determine from Mr. Yancey's testimony that the fair market value of the television was more than $500 but less than $1,000. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE