IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 7, 2006 Session

## STATE OF TENNESSEE v. MARIO JOHNSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-04524-25     Chris Craft, Judge**

_____

**No. W2005-01052-CCA-R3-CD  - Filed June 2, 2006**

_____

This is a direct appeal from convictions on a jury verdict of four counts of aggravated robbery. See Tenn. Code Ann. § 39-13-402.  The Defendant was sentenced as a Range II, multiple offender to sixteen years for each conviction to be served consecutively in part for an effective thirty-two-year sentence.  On appeal, the Defendant raises four issues: (1) the trial court erred in consolidating the Defendant's two indictments for a single trial; (2) the admission of hearsay statements is plain error; (3) the trial court erred in failing to instruct the jury on the lesser-included offense of aggravated assault; and (4) the trial court's imposition of consecutive sentences violated the Defendant's constitutional rights pursuant to Blakely v. Washington, 542 U.S. 296 (2004). We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Lance Chism, Memphis, Tennessee, for the appellant, Mario Johnson.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William Gibbons, District Attorney General; and Alanda Dwyer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The convictions at issue in this case stem from two separate robberies, occurring a week apart, of the same Chinese Restaurant.  The facts show that the Defendant, Mario Johnson, robbed the Peking Inn restaurant in Memphis at gunpoint on both February 26 and March 5 of 2003.  In both instances, the Defendant, along with one or more accomplice(s), bound and gagged the same two

restaurant employees with duct tape after robbing them of personal property and also taking cash from the store register. The Defendant was ultimately arrested, and in May of 2003, a Shelby County grand jury issued two separate indictments, one for each robbery, containing four counts of aggravated robbery each.[1]

In November of 2004, an evidentiary hearing was conducted on the State's motion to consolidate the two indictments for trial. The State argued that, because identity was an issue and because the two robberies evidenced a common scheme, the two cases should be consolidated for trial. The Defendant argued that, while some elements of both robberies were admittedly similar, there was no common scheme, and even if there was, consolidation of the two cases would unfairly prejudice the Defendant. The trial court granted the State's motion to consolidate, and the Defendant received a jury trial in January of 2005.

At trial, Ms. Yongci Chen testified that she works at the Peking Inn restaurant with her husband and father-in-law, and that she was a victim of both robberies perpetrated by the Defendant.[2] Ms. Chen explained that on the evening of February 26, 2003, she received a call at approximately 8:00 for a take-out order to be delivered to the Airport Inn. The telephone number of the phone from which the order was placed was recorded on the restaurant's caller ID. Ms. Chen testified that a "very short time" after the call was placed and her husband left to deliver the order, the restaurant was robbed. According to Ms. Chen, two men entered the restaurant and demanded money. Neither attempted to hide their identity, and Ms. Chen recognized the Defendant as a former patron. Ms. Chen explained that one man was armed with a knife and the other a "long gun." She described the gunman as "a tall guy, much taller than me. He's big and his hair is kind of curled up." Ms. Chen identified the Defendant as the gunman.

Ms. Chen testified that the Defendant ordered her to open the cash register drawer, and she complied. She further stated that both she and her father-in-law were placed in fear. She could state that her father-in-law was in fear because, while he did not speak English, he was pleading with the two robbers in Cantonese not to hurt him or his daughter-in-law. Ms. Chen testified that after obtaining money from the cash register and taking her purse, the latter of which contained her driver's license, the two robbers forced her and her father-in-law into a back closet and bound and gagged them both with duct tape. Ms. Chen specifically requested, to no avail, that the robbers leave her driver's license. As the two were leaving, the Defendant again pointed the gun at them and warned them not to move.

---

[1]Each indictment included two counts of aggravated robbery with alternative elements for each of the two victims; counts one and three of each indictment charged aggravated robbery through violence, and counts two and four of each indictment charged aggravated robbery under the theory of putting the victim in fear.

[2]Ms. Yongci Chen and Mr. Yingbin Chen submitted their testimony at trial through an interpreter, who translated their statements from their native language of Cantonese into English. We note the translator was subjected to voir dire and found competent by the trial court.

After the two robbers left, the victims managed to free themselves, and Ms. Chen depressed the alarm button and called the police while her father-in-law rushed to the front door and observed the robbers flee in "an old car, kind of reddish color."  Ms. Chen also stated that she thought one of the robbers as wearing gloves, but she was not sure.

Approximately a week later, on March 5, 2003, the same three people were working in the restaurant when another call for a delivery order to the American Inn at the same address was placed at about the same time, 8:00 p.m.  Additionally, the caller ID indicated that this food order was placed from the same phone as the bogus order directly preceding the robbery a week earlier.  Ms. Chen did not fill this order, but her husband was required to leave the restaurant on other deliveries. A short time later, a customer came in to pick up an order and was followed by two other men, whom Ms. Chen recognized as the robbers from the previous week.  The Defendant pointed a gun at Ms. Chen and her father-in-law, again placing them in fear.  Ms. Chen was once again forced to open the cash register.  During this second robbery, the Defendant's accomplice displayed Ms. Chen's drivers license, stolen a week prior, and threatened that she must cooperate if she wanted it back.  The robbers stole cash from the register and money from Ms. Chen's son's piggy bank, which was on the counter.  Again, the robbers forced both Ms. Chen and her father-in-law into the same closet and bound and gagged them with duct tape before leaving.

A short time after this second robbery, the Defendant was developed as a suspect.  His picture was included in a photographic line-up and presented to Ms. Chen and her father-in-law.  Both victims positively identified the Defendant as one of the men involved in both robberies.  Ms. Chen also testified that her father-in-law had cancer and was too sick to come to court and testify in person.

Mr. Yingbin Chen testified that he worked at the Peking Inn with the two victims; his wife, Ms. Yongci Chen, and his father, Mr. Fu Chen, who owned the restaurant.  Normally, his father cooked the food, his wife took orders and served as the cashier, and he delivered the take-out orders. Mr. Chen testified that on the evening of February 26, 2003, he took a delivery to the Airport Inn, but no one was at the specified address to receive the food.  When he returned, he was informed the restaurant had been robbed.  Because he was more fluent in English than his wife and father, Mr. Chen assisted the police in collecting the victims' statements by serving as a translator.   Mr. Chen further testified that on the evening of March 5, 2003, he was out making deliveries when he returned to find the restaurant had been robbed once again.  Mr. Chen assisted the police in taking the victims' statements a second time.  Mr. Chen also testified that he witnessed his father look at a photographic line-up presented by the police and positively identify a suspect, circle a  photo and sign his name.   On cross-examination, Mr. Chen admitted he had no personal knowledge of who committed either robbery.

Officer Ricky Davison of the Crime Response Unit, Memphis Police Department, testified that he was called to the Peking Inn restaurant the evening of February 26, 2003, and took photographs of the crime scene and collected evidence.  He found a glove on the floor in the closet where the victims reported they had been bound and gagged, and he discovered and tagged as

evidence "wadded up duct tape." Officer B. G. Winston of the Memphis Police Department testified that he was assigned to examine the crime scene at the Peking Inn restaurant on March 5, 2003, and he found a roll of duct tape, a wad of used duct tape, and an empty cash register drawer.

Sergeant Aaron Kant of the Memphis Police Department testified that he responded to the March 5, 2003 robbery of the Peking Inn restaurant and interviewed a clerk from a hotel next to the restaurant, who stated that she observed a maroon Buick with a luggage rack and Mississippi tags in the area about the time of the robbery. Officer Kant also recorded the incoming phone number, 313-6839, from the restaurant caller ID after the victims informed him that it was the same number that called in a bogus order just prior to the robbery a week earlier. A few days later, Officer Kant received a tip from an informant stating that the Defendant was involved in the Peking Inn robberies and disclosing the location where the Defendant was staying at the time. Based on this tip, Officer Kant found the Defendant sitting in a maroon vehicle with Mississippi tags. Because the Defendant had existing warrants for unrelated charges, he was immediately arrested. On cross-examination, Officer Kant revealed that the informant was the boyfriend of the Defendant's sister, who had been an initial suspect in the robberies. Officer Kant also stated that the maroon car with Mississippi tags in which the Defendant was discovered was a Ford, and not a Buick.

Ms. Brandi Johnson, the Defendant's sister, testified that she worked and lived at the Airport Inn during the time of the crimes at issue in this case. Ms. Johnson explained that she was familiar with the Peking Inn restaurant, which was only two or three minutes away from where she lived and worked, and that she was a regular patron of the restaurant. She also testified that during this time period she saw her brother, the Defendant, on a regular basis, and that he "always use [sic] my phone." Ms. Johnson admitted that she owned a cell phone assigned the number 315-6839, and that the police confiscated this phone about the same time her brother was arrested. While she had difficulty remembering at trial the events of the days the robberies occurred, Ms. Johnson conceded that she made initial statements to the police shortly after the robberies in which she reported that the Defendant visited her at 7:45 the evening of March 5, 2003, and borrowed her cell phone for about a half an hour. She also informed the police that the Defendant was staying at the American Inn around the time of the robberies, which was located next door to the Peking Inn restaurant.

Ms. Lydia Shives, an employee of the American Inn, testified that on March 5, 2003, she noticed a "burgundy car" with Mississippi tags outside the hotel. At approximately 7:30 that evening, she witnessed the car being driven across the street to a parking lot near the Peking Inn restaurant. Someone was picked up, and the vehicle then drove off.[3] Ms. Shives also authenticated registration cards from the American Inn hotel, which indicated that Mr. Kevin Johnson, the Defendant's brother, rented a room from February 22 to March 1, 2003. Ms. Shives further testified that she saw the Defendant in this room once when she was doing housekeeping. Ms. Shives identified the photograph of the car in which the Defendant was arrested as a photo of the same car she observed the night of the March 5, 2003 robbery.

---

[3]Ms. Shives testified on cross-examination that the car contained three people.

Officer Tom Warrick, a Detective with the Robbery Bureau of the Memphis Police Department, testified that during the course of his investigation he learned that both bogus food order calls preceding the two robberies were made from the same cell phone owned by Ms. Brandi Johnson. While he was initially interested in Mr. Marcus Morgan, Ms. Johnson's ex-boyfriend, Mr. Morgan was eventually ruled out as a suspect because his picture was not identified by the victims and his alibi for the time of the robberies checked out. The Defendant was then developed as a suspect after talking to Ms. Johnson and the victim's identification of the Defendant in a photographic line-up. Additionally, Det. Warrick testified that Mr. Fujun Chen[4] identified the car in which the Defendant was arrested as the car he witnessed drive off after the first robbery.

After his motion for acquittal was denied, the Defendant presented proof through the testimony of two witnesses. Ms. Dorothy Johnson, the Defendant's grandmother, testified that on the evening of February 26, 2003, the Defendant was at her house from around 5:30 or 6:00 until the next morning. She testified that she was sure he was there because she was a light sleeper and would have heard the car drive off. On cross-examination, Ms. Johnson admitted that she was not sure of the date, as it was two years prior, and further conceded that she did not stand by the window all night long, watching the Defendant's car.

Mr. Kevin Johnson, the Defendant's brother, testified that on February 26, 2003, he was with the Defendant from 5:30 or 6:00 until he went to bed at his grandmother's house around 8:00. When he awoke at around midnight the Defendant was still there, and he again saw the Defendant at their grandmother's house the next morning. On cross-examination, Mr. Johnson admitted that he paid for the Defendant to stay the night at the American Inn the same night he testified they both spent the night at their grandmother's house. He also admitted that he did not know where the Defendant was between the time he went to bed, around eight or nine that night, and when he woke up again at midnight.

At the conclusion of the trial, the jury found the Defendant guilty as charged of all eight aggravated robbery offences. The trial court merged the four counts of aggravated robbery through fear into the four counts of aggravated robbery through violence. After a sentencing hearing, the Defendant was sentenced as a multiple offender to sixteen years for each of his four aggravated robbery convictions. The trial court ran counts one and three of each indictment concurrently, but mandated that the sentences from the two separate indictments be served consecutively for an effective sentence of thirty-two years. The Defendant's motion for a new trial was denied, and this appeal followed.

## ANALYSIS

On appeal, the Defendant argues the trial court erred in consolidating the indictments at trial; that the trial court's admission of hearsay statements and its failure to instruct the jury on the lesser

---

[4] Mr. Fujun Chen, victim Yongci Chen's father-in-law, is also referred to as Mr. Fu Chen in other portions of the record.

included offense of aggravated assault both constitute plain error; and the trial court's imposition of consecutive sentences violated his constitutional rights to a jury trial.

## I. Consolidation

In his first issue on appeal, the Defendant claims that the trial court abused its discretion by granting the State's motion to consolidate the two indictments for trial. To support this assertion, the Defendant argues that the robberies fail to evince a common scheme or plan, as the two separate robberies were not so unique that they should be considered "signature" crimes. The Defendant notes that in the first robbery, two men were reported, while the victim testified that three men were involved in the second robbery. Additional differences, such as the use of gloves and the hiding of a gun under a jacket attested to in one robbery but not the other, proves there were "just as many differences" as there were similarities in the two crimes, according to the Defendant. Furthermore, the Defendant argues that any probative value of consolidating the two robberies for identity purposes was outweighed by the prejudicial effect, and that the trial court's error in consolidating the two indictments cannot be deemed harmless. The State argues that the two robberies did constitute a "signature" crime and therefore consolidation was proper, and in the alternative, any error in consolidation was harmless considering the "overwhelming" proof in evidence that the Defendant was guilty of both robberies.

A trial court's decision concerning consolidation of offenses will be reviewed for an abuse of discretion. See State v. Denton, 149 S.W.3d 1, 12 (Tenn. 2004); Spicer v. State, 12 S.W.3d 438, 442 (Tenn. 2000). Thus, a trial court's decision to consolidate offences will not be reversed unless the court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." Spicer, 12 S.W.3d at 443.

Consolidation of multiple offenses against a single defendant for a single trial is governed by Rules 8, 13, and 14 of the Tennessee Rules of Criminal Procedure. Denton, 149 S.W.3d at 12. Rule 8 of the Tennessee Rules of Criminal Procedure provides that "[t]wo or more offenses may be joined in the same indictment, presentment, or information, with each offense stated in a separate count or consolidated pursuant to Rule 13 if the offenses constitute parts of a common scheme or plan or if they are of the same or similar character." Tenn. R. Crim. P. 8(b). Rule 13 gives the trial court the option to consolidate two or more indictments for trial if the offenses could have been joined in a single indictment pursuant to Rule 8(b). See Tenn. R. Crim. P. 13(a). Additionally, Rule 14 provides that where "two or more offenses have been joined or consolidated for trial pursuant to Rule 8(b), the defendant shall have a right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others." Tenn. R. Crim. P. 14(b)(1). Thus, according to our supreme court, the combined effect of these rules is to

> allow the prosecution, under Rule 8(b), to consolidate similar charges against one defendant into one indictment and to be heard in one trial. Also, the prosecution can request the trial court to consolidate, pursuant to Rule 13, other indictments for trial if they constitute parts of the same "common scheme or plan" or are the "same or

similar" crimes as others with which the defendant is charged. However, if the defendant objects to consolidation or moves to sever the offenses for trial, then Rule 14(b)(1) places the burden on the prosecution to show that the offenses are part of a common scheme or plan and the evidence of each crime would be admissible in the trial of the other. Spicer, 12 S.W.3d at 443. Thus, under Rule 14(b)(1), in addition to showing that the offenses are part of a common scheme or plan, there is also a question of evidentiary admissibility that must be addressed.

Denton, 149 S.W.3d at 13.

Because of the evidentiary component, for consolidation to be proper the trial court must conclude that: (1) the evidence of each offense is relevant to some material issue in the trial of all the other offenses, see Tenn. R. Evid. 404(b)(2); and (2) the probative value of the evidence of other offenses is not outweighed by the prejudicial effect that admission would have on the defendant, see Tenn. R. Evid. 404(b)(4), in addition to finding a common scheme. See Denton, 149 S.W.3d at 13; Spicer, 12 S.W.3d at 445. Accordingly, evidence of other offenses that "tends to show a defendant's character or propensity" is generally not admissible. See Denton, 149 S.W.3d at 13 (citing Tenn. R. Evid. 404(b)). However, rules excluding evidence of other offenses will not bar evidence of other crimes, wrongs or acts when it is offered to prove "some other issue relevant at trial." State v. Moore, 6 S.W.3d 235, 239 (Tenn. 1999). For example, evidence of other crimes may be admissible for purposes of demonstrating "motive, intent, identity, the absence of mistake or accident, or the existence of a larger continuing plan." Denton, 149 S.W.3d at 13.

In this case, the trial court found the State met its burden of proving the two robberies were part of a common scheme. Tennessee case law has recognized three separate types of common scheme evidence for purposes of severance or consolidation: (1) offenses that reveal a distinctive design or are so similar as to constitute "signature" crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction. See State v. Shirley, 6 S.W.3d 243, 248 (Tenn 1999). The record reveals that at the Defendant's pre-trial consolidation motion hearing, the trial court found the two robberies constituted a "signature" crime. The trial court noted that the "offenses happened a week apart. They involved the same phone call, the same delivery, the same duct tape, and in one offense it is alleged that one of the perpetrators, the defendant, showed to the victim proceeds from the prior robbery which would be essential to show identity."

Our supreme court has held that the test for finding "signature" crimes is not merely whether a defendant committed both crimes, but rather "whether there was a unique method used in committing the crimes." Moore, 6 S.W.3d at 241. The "modus operandi employed must be so unique and distinctive as to be like a signature." Id. at 240. Phrased another way, the "methods used in committing the offenses must have such unusual particularities that reasonable men can conclude that it would not likely be employed by different persons." Shirley, 6 S.W.3d at 248.

We find the robberies at issue in this case were so factually unique and distinctive as to constitute a signature "modus operandi." The two robberies were committed at the same time of night and on the same day of the week; a telephone call from the same cell phone preceded each robbery; both telephone calls placed a "bogus" order to be delivered to the same motel; the robbers waited until the delivery man was away, each time leaving only a small, young woman and an elderly man in the restaurant; one robber was armed with a "long gun" on each occasion; each time the victims were bound and gagged with duct tape and placed in the same closet; and the method of escape after each robbery was an older maroon car with Mississippi tags. The victims of each robbery were the same. Under these circumstances, we are unable to conclude that the trial court abused its discretion when it found the manner in which both robberies were committed constituted a "signature" crime.

Furthermore, we find the trial court did not abuse its discretion in finding that the evidence of one of the robberies would be admissible upon the trial of the other had they not been consolidated. See Tenn. R. Crim. P. 14(b)(1). The Tennessee Supreme Court has held that when consolidation is based on a "signature" crime theory, "usually the only reason to allow admission of other offenses is to establish the identity of the defendant." Denton, 149 S.W.3d at 14. In this case, identity was an issue, and the evidence of a signature "modus operandi"--as well as evidence of the robbers showing the victim proceeds of the first robbery at the second--is certainly relevant for the purposes of proving identity. Additionally, the probative value of admitting the evidence of the Defendant's common scheme was not outweighed by prejudicial effect. Accordingly, we conclude that the trial court did not abuse its discretion in consolidating the Defendant's two indictments for trial. This issue is without merit.

## II. Admission of Hearsay Statements

In his second issue on appeal, the Defendant claims the admission of Mr. Fujun Chen's hearsay statements was plain error that this Court should recognize and remedy. To support this assertion, the Defendant argues that the Tennessee Rules of Evidence prohibit the hearsay statements of Mr. Fujun Chen's identification of the Defendant and the get-away vehicle, which were presented at trial through the testimony of his son and daughter-in-law. The Defendant concedes that an objection to the alleged inadmissible hearsay was not made at trial or in the motion for a new trial, but nonetheless argues that this particular error is addressable by this Court because it meets the requirements of a plain error analysis. The State argues that the Defendant waived this issue by failing to timely raise it before the trial court, or in the alternative, argues that the evidence contained in the record does not support plain error review.

Our supreme court has mandated that when "a party does not object to the admissibility of evidence, . . . the evidence becomes admissible notwithstanding any other Rule of Evidence to the contrary, and the jury may consider that evidence for its 'natural probative effects as if it were in law admissible.'" State v. Smith, 24 S.W.3d 274, 280 (Tenn. 2000) (quoting State v. Harrington, 627 S.W.2d 345, 348 (Tenn. 1981)). Accordingly, we find no error was committed, and any consideration of whether the hearsay statements of Mr. Fujun Chen submitted at trial could have

been inadmissible hearsay is waived for failure to object to the testimony at trial or raise the issue before the trial court at a motion for new trial. See Tenn. R. App. P. 36(a).

In addition, we briefly note that the issue presented by the Defendant fails to meet the requirements necessary for a finding of plain error. Our supreme court has recently upheld the long established rule that "plain error review places on the defendant the burden of persuasion," and that "[t]he substantive standards for plain error review are difficult to satisfy." State v. Gomez, 163 S.W.3d 632, 646 (Tenn. 2005). An appellate court can reverse for plain error only if:

(a) the record . . . clearly establish[es] what occurred in the trial court;
(b) a clear and unequivocal rule of law [has] been breached;
(c) a substantial right of the accused [has] been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is "necessary to do substantial justice."

Smith, 24 S.W.3d at 282 (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). Furthermore, all five factors must be established, and this Court need not address all five factors if any one factor indicates that relief is not warranted. Smith, 24 S.W.3d at 283.

In this case, the Defendant has failed to demonstrate that "consideration of the error is 'necessary to do substantial justice.'" Id. at 282. Tennessee Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The Defendant is correct that generally, "[h]earsay is not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 802. Even if we were to find the admission of the hearsay statements was error, the overwhelming proof of guilt presented in this case would have rendered it harmless error, and therefore, our consideration of this issue would not be necessary to do substantial justice. We decline to find "plain error." This issue is without merit.

### III  Jury instruction of lesser-included offense

The Defendant also alleges that the trial court erred by failing to instruct the jury on the elements of aggravated assault, a lesser-included offense of aggravated robbery. To support this claim, the Defendant argues that this Court has consistently held that aggravated assault is a lesser-included offense of his indicted charge of aggravated robbery, and that our supreme court has stated that "[i]f a jury could convict, no matter how improbable, it is error not to charge that lesser-included offense." State v. Richmond, 90 S.W.3d 648, 662 (Tenn. 2002). The State argues that this issue is waived because the Defendant failed to ask for this additional jury charge in writing as required by statute, and in the alternative, argues that the omission of the jury charge, if error, was harmless error.

The Defendant did not raise the trial court's failure to instruct the jury on the lesser-included offense of aggravated assault in his motion for a new trial. Accordingly, we could properly find that the Defendant failed to preserved this issue for appeal pursuant to Tennessee Rules of Appellate

Procedure. See Tenn. R. App. P. 3(e), and 36(a). However, in this case we are statutorily bound to find that the Defendant waived this issue by failing to submit a written request for the lesser-included jury instruction at trial. Tennessee Code Annotated section 40-18-110, in pertinent part, provides:

> (b) In the absence of a written request from a party specifically identifying the particular lesser included offense or offenses on which a jury instruction is sought, the trial judge may charge the jury on any lesser included offense or offenses, but no party shall be entitled to any such charge.
> (c) Notwithstanding any other provision of law to the contrary, when the defendant fails to request the instruction of a lesser included offense as required by this section, such instruction is waived. Absent a written request, the failure of a trial judge to instruct the jury on any lesser included offense may not be presented as a ground for relief either in a motion for a new trial or on appeal.

Tenn. Code Ann. § 40-18-110(b), and (c). Our supreme court has recently concluded that "Tennessee Code Annotated section 40-18-110(c) does not violate a defendant's right to trial by jury." State v. Page, 184 S.W.3d 223, 231 (Tenn. 2006). Therefore, we conclude the issue was waived.

We briefly consider whether it is appropriate to review the failure to charge the lesser included offense of aggravated assault under the doctrine of plain error. As our supreme court recently stated, "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." Id. Here, as in Page, the Defendant has failed to show he did not waive this issue for tactical reasons. Therefore, we decline to find plain error. The Defendant is not entitled to relief on this issue.

## IV. Sentencing

In his final issue on appeal, the Defendant claims that his constitutional rights to a trial by jury, under the Sixth Amendment of the federal Constitution and Article I, Section 6 of the Tennessee Constitution, were impugned when the trial court made determinations of fact that were not submitted to a jury.[5] The Defendant cites to Blakely v. Washington, 542 U.S. 296 (2004), in which the Supreme Court held that the Sixth Amendment to the federal Constitution permits a defendant's sentence to be increased only if the enhancement factors relied upon by the trial judge are based upon facts reflected in the jury verdict, admitted by the defendant, or are based on the defendant's previous criminal history. However, the Tennessee Supreme Court has recently considered the impact of the Blakely ruling on Tennessee's sentencing scheme and has concluded that the Criminal Sentencing Reform Act of 1989, under which the Defendant in this case was sentenced, does not violate a defendant's constitutional rights. See Gomez, 163 S.W.3d at 661.

---

[5] The record reveals that the trial court relied on two factors in determining that consecutive sentencing was warranted in this case; the Defendant's criminal history was extensive, and the Defendant was a dangerous offender. See Tenn. Code Ann. § 40-35-115(b)(2) and (4) (2005).

The Defendant acknowledges our supreme court's ruling in <u>Gomez</u>. However, he nonetheless argues in his appellate brief that "<u>Blakely</u> should be read for the broad proposition that any fact finding that increases a defendant's sentence above the 'statutory maximum' should be found beyond a reasonable doubt by a jury." The Defendant argues that the statutory default of concurrent sentencing establishes a "statutory maximum" sentence of twenty years for a Range II, multiple offender convicted for a Class B felony, therefore he now asserts that the imposition of consecutive sentencing, resulting in his thirty-two-year effective sentence, violated his constitutional rights to a trial by jury. Accordingly, the Defendant first argues that, because <u>Gomez</u> addressed standard enhancements and not consecutive sentencing, it is not controlling of his case. In the alternative, the Defendant argues that <u>Gomez</u> was "incorrectly decided," and he therefore raises this issue on appeal in order to preserve it should <u>Gomez</u> be overturned.

We find <u>Gomez</u> is controlling of this issue, and therefore consecutive sentencing based on factors found by the trial court, and not decided by a jury, is allowed under Tennessee's sentencing act.[6] <u>See</u> <u>State v. Clarence W. Carter,</u> No. M2004-00757-CCA-R3-CD, 2005 WL 1307807, at *5 (Tenn. Crim. App., Nashville, June 1, 2005). Moreover, we acknowledge and respect the Defendant's desire to preserve this issue for possible federal review. However, this Court is obviously required to follow our supreme court's decisions. Our duty, as an intermediate appellate court, is clear: "It is a controlling principle that inferior courts must abide the orders, decrees and precedents of higher courts. The slightest deviation from this rigid rule would disrupt and destroy the sanctity of the judicial process." <u>Barger v. Brock</u>, 535 S.W.2d 337, 341 (Tenn. 1976). Accordingly, pursuant to the Tennessee Supreme Court's <u>Gomez</u> ruling, the Defendant's claim of a violation of his constitutional right to trial by jury due to the trial court's imposition of consecutive sentences is without merit.

## CONCLUSION

Based on the foregoing reasoning and authorities, the judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE

---

[6]We also note that, even before our supreme court's recent ruling in <u>Gomez</u>, this Court consistently found that <u>Blakely</u> did not affect consecutive sentencing determinations. <u>See</u> <u>State v. Rose Marie Hernandez</u>, No. M2003-01756-CCA-R3-CD, 2004 WL 2984844, at *4 (Tenn. Crim. App., Nashville, Dec. 16, 2004); <u>State v. Earice Roberts</u>, No. W2003-02668-CCA-R3-CD, 2004 WL 2715316, at *15 (Tenn. Crim. App., Jackson, Nov. 23, 2004); <u>State v. Lawrence Warren Pierce</u>, No. M2003-01924-CCA-R3-CD, 2004 WL 2533794, at * 16 (Tenn. Crim. App., Nashville, Nov. 9, 2004).