IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 14, 2009

## STATE OF TENNESSEE v. PATRICK BROWN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-09028     Paula Skahan, Judge**

---

**No. W2008-00108-CCA-R3-CD**

---

The defendant, Patrick Brown, was convicted of criminal attempt to commit second degree murder, a Class B felony, and was sentenced to twelve years as a Range I, standard offender. On appeal, he argues that: the evidence was insufficient to support his conviction; the trial court erred in allowing the State to reopen its case in chief; and he was sentenced improperly. After careful review, we affirm the judgment from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Rebecca G. Coffee, Memphis, Tennessee, for the appellant, Patrick Brown.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Colin Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case involves a car chase and shooting in which the defendant and an accomplice chased the victim while the defendant shot a .9mm handgun. The defendant shot out the victim's windshield, causing him to crash his car into a semi-trailer. The car burst into flames after the collision, and, as a result, the victim was badly burned and lost both legs.

Trial

The victim testified that he knew both the defendant and the co-defendant, Phillip Williams, prior to the night of the shooting. He said that he observed both men driving around in a purple Nissan Altima several times prior to the shooting. The victim testified that the defendant was in the passenger seat when he saw the car and that the co-defendant was driving. Just before the shooting, he noticed that the purple Altima was following him and saw the car stop behind him at a four-way

stop sign at Polk and Walnut. The victim testified that he was unarmed when he saw the defendant shoot at him. He tried to flee when he heard the first two shots. He said that he heard seven or eight additional shots fired after the initial volley. The victim recalled that his windshield shattered, he lost control of his car, and crashed into a semi-trailer. The injured victim exited his car and noticed that his pants were on fire. Two men helped him move away from the wreck before the car exploded.

A fourteen-year-old testified that he was watching television when he heard gunshots and a crash. He went to the window in time to see a purple Altima drive by fast.

Officer David Galloway, a crime scene investigator with the Memphis Police Department, testified that he responded to the scene. He recovered twelve shell casings at the crime scene, which encompassed most of the street. He testified that police also discovered the victim's burned pants and wallet at the scene, near the victim's burned vehicle.

Officer Jeff Herbison testified that he was a member of the Memphis Police Department's uniformed patrol at the time of the shooting. He said that he contacted the defendant and took him into custody.

Phillip Williams testified that he was the owner of the purple Nissan Altima involved in the shooting during the early morning hours of July 30, 2006. He claimed that the defendant was responsible for firing the shots from the car. He testified that the defendant believed the victim had "shot up his house" earlier that morning. Williams believed that the victim also fired shots during the incident. He acknowledged telling officers that the victim and the defendant were fighting over a girl, though he said he had no direct knowledge of the source of the conflict. He also acknowledged that his testimony was different from the statements he made to police at the time of his arrest. He testified that he previously told police that the defendant fired shots while outside the car.

The defendant's grandmother testified on his behalf and said that shots were fired at their house in the early morning hours of July 30, 2006. She acknowledged that she did not tell police about the shooting. She testified that the defendant was not in his room at the time the shots were fired at their home and could not have shot at the victim because he was in his room at the time of the shooting.

Sentencing Hearing

During the sentencing hearing, the trial court found that the defendant had a history of criminal convictions sufficient to enhance his sentence. The defendant's prior convictions included driving while his licence was suspended, revoked, or cancelled, and a prior misdemeanor conviction for possession of drugs. He also had a juvenile adjudication for aggravated assault, which included a shooting. The trial court also applied sentencing enhancement factors that: (2) the defendant was a leader in the commission of an offense involving two or more criminal actors; (9) the defendant

possessed or employed a firearm, explosive device, or other deadly weapon during the commission of the offense; (16) the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. *See* T.C.A. § 40-35-114 (1), (2), (9), and (16) (2006). The trial court sentenced the defendant as a Range I, standard offender to the maximum sentence of twelve years.

Analysis

On appeal, the defendant argues that the evidence was insufficient to support his conviction. Though the defendant labels his argument as a challenge to the sufficiency of the evidence, in reality, he challenges the testimony of both the victim and the co-defendant and alleges that their testimony was "emotional, contradictory to the physical evidence, and . . . self-serving." Further, the defendant argues that the trial court erred in admitting technical evidence allegedly not provided in pretrial discovery.

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the State is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *Id.* This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. *State v. Brewer*, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994).

The defendant was convicted of the offense of criminal attempt to commit second degree murder, a Class B felony. Second degree murder is a knowing killing of another. T.C.A. § 39-13-210(a)(1) (2006). As relevant here, a person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

> (2) Acts with intent to cause a result that is an element of the offense and believes the conduct will cause the result without further conduct on the person's part; or

> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

T.C.A. § 39-12-101(a)(2)-(3) (2006).

The defendant concludes that it was the emotional nature of the victim's testimony and not the evidence presented at trial that persuaded the jury to convict him. At trial, the victim identified the defendant as the person who shot at him multiple times. One of the shots shattered the victim's windshield and caused him to lose control of the vehicle and then crash into a parked semi-trailer. The victim lost both of his legs as a result. Officers recovered .9mm shell casings from the origin of the attack to the intersection where the victim's burned vehicle was discovered. Further, the co-defendant testified that the defendant shot a .9mm pistol at the victim while they were chasing him. The evidence contained in the record was sufficient to support the defendant's convictions. The evidence demonstrated that the defendant knowingly fired a pistol at the victim while engaged in a car chase on a Memphis city street at a fast rate of speed. The defendant's firing at the victim is sufficient to demonstrate that the defendant acted with the intent to cause harm to the victim.

With regard to the defendant's argument that the trial court coerced the co-defendant into testifying and that the trial court erred in admitting the technical proof, these issues are waived due to the defendant's failure to raise a contemporaneous objection. The defendant did not raise an objection at trial or in his motion for new trial. By failing to make a contemporaneous objection to testimony, a defendant waives appellate consideration of the issue. *State v. Adler*, 71 S.W.3d 299, 302 (Tenn. Crim. App. 2001); *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000).

Next, the defendant argues that the trial court erred in allowing the State to reopen its proof to allow the co-defendant to testify. At the close of proof on September 11, 2007, the State announced that it would conclude its proof. Before further proceedings on September 12, 2007, the State moved to reopen its case. The State noted that the defense had neither made a motion for acquittal nor called any witnesses or put on proof. The trial court found that reopening the case would present no unfair surprise to the defendant because the defendant had presented no proof.

The decision to allow a party to reopen its proof after closing rests within the sound discretion of the trial judge. *State v. Anthony Paul Alderson,* No. 01C01-9611-CC-00461, 1997 Tenn. Crim. App. LEXIS 1174, at *4 (Tenn. Crim. App. at Nashville, Nov. 21, 1997) (*citing State v. Tuttle*, 914 S.W.2d 926, 931 (Tenn. Crim. App. 1995)). When the defendant has yet to make a motion for judgment of acquittal or otherwise present his case, the trial court does not abuse its discretion by granting the State's motion to reopen its proof. Prejudice cannot result from the reopening of the State's case nor from the introduction of the testimony. *State v. Harrington*, 627 S.W.2d 345, 348 (Tenn. 1981). Therefore, we conclude the trial court did not err in allowing the State to reopen its proof.

Next, the defendant argues that he was improperly sentenced. Specifically, he contends that the trial court held the defendant's decision not to testify at the sentencing hearing against him. He also contends that the trial court improperly applied the sentencing enhancement factor for prior criminal behavior. Finally, he argues that the length of the sentence imposed is not reasonably related to the severity of the offense.

The defendant was sentenced in 2007 for a crime he committed on July 30, 2006. He was sentenced as a Range I, standard offender to the maximum of twelve years. A defendant who challenges his sentence has the burden of proving the sentence imposed by the trial court is improper. T.C.A. § 40-35-401 (2006), Sentencing Commission Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his sentence. T.C.A. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). If the trial court has imposed a lawful sentence by following the statutory sentencing procedure, given due consideration and proper weight to the factors and sentencing principles, and made findings of fact adequately supported by the record, this court may not modify the sentence even if it had preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, if the trial court does not comply with statutory sentencing provisions, our review of the sentence is *de novo* with no presumption the trial court's determinations were correct. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) the evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make his own behalf about sentencing. T.C.A. § 40-35-210(b); *see also State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008); *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

The defendant's conduct occurred after the enactment of the 2005 amendments to the Sentencing Act, which became effective June 7, 2005. The amended statute no longer imposes a presumptive sentence. *Carter*, 254 S.W.3d at 343. As further explained by our supreme court in *Carter*,

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." [T.C.A.] § 40-35-210(d). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," [T.C.A.] § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," [T.C.A.] § 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," [T.C.A.] § 40-35-103(5).

*Id.* (footnote omitted); *see also State v. Eddrick Devon Pewitte*, No. W2008-00747-CCA-R3-CD, 2009 Tenn. Crim. App. LEXIS 5, at *23 (Tenn. Crim. App. at Jackson, Jan. 5, 2009).

The 2005 Amendment to the Sentencing Act deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered these factors merely advisory, as opposed to binding, upon the trial court's sentencing decision. *Carter*, 254 S.W.3d at 343. Under current sentencing law, the trial court is, nonetheless, required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. *Id.* at 344. The trial court's weighing of various mitigating and enhancing factors is now left to the trial court's sound discretion. *Id.* Thus, the 2005 revision to Tennessee Code Annotated section 40-35-210 increases the amount of discretion a trial court exercises when imposing a sentencing term. *Id.* at 344.

The State argued for the application of the following enhancement factors under Tennessee Code Annotated section 40-35-114:

(1)    The defendant had a previous criminal history or behavior in addition to those necessary to establish the appropriate range,

(2)    The defendant was a leader in the offense involving two or more criminal actors,

(9)    The defendant possessed or employed a firearm,

(10)    The defendant had no hesitation about committing a crime when the risk to human life was high.

(16)    The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed as an adult.

The trial court did not apply enhancement factor (10) in setting the defendant's sentence. The record reflects that the defendant had prior adjudications as a juvenile that would have been felonies had he been an adult, including an aggravated assault that involved the defendant shooting at another person. The presentence report reflects that the defendant had two convictions as an adult: driving with a license that was suspended, canceled, or revoked and possession of drugs, but neither conviction was a felony.

The defendant argues that the trial court erred in using a prior arrest against him as proof of criminal behavior. The arrest to which the defendant refers involved the defendant shooting a gun at another person in 2006. The defendant was arrested but was not formally charged. The sentencing court mentioned this prior incident but specifically stated that the court was "not going to consider it against him other than the fact that he's got a very violent history." The presentence report reflects that the defendant had a separate adjudication as a juvenile for shooting at someone, and the trial court considered that adjudication but did not use the 2006 arrest to enhance the

defendant's conviction. Further, during the hearing on the motion for new trial, the trial court stated that it "[did not] use (the arrest) to enhance Mr. Brown's sentence." This issue is without merit.

Next, the defendant argues that the trial court erred in applying sentencing enhancement factors (2) and (9): the defendant was a leader in the offense involving two or more criminal actors, and the defendant possessed or employed a firearm. During the motion for new trial, the court stated that these enhancement factors were not determined by the jury and were not admitted by the defendant and that there could be an issue with applying those factors. The trial court further stated that it would no longer give any weight to those enhancement factors but declined to reduce the defendant's sentence because of his criminal history. Because the trial court's weighing of the various enhancing factors is left to the trial court's sound discretion, we conclude that the defendant was properly sentenced and that the trial court was free to give whatever weight it considered appropriate to the existing enhancement factors. *See Carter,* 254 S.W.3d at 344.

Next, the defendant contends that the trial court held the defendant's decision not to testify at the sentencing hearing against him when it set his sentence. The trial court addressed this issue during the hearing on the motion for new trial and stated that it was the defendant's right to not take the stand. The trial court clarified that the defendant's remorse or lack thereof was not an aggravating or mitigating factor considered by the court and stated that the court was only commenting that the defendant had an opportunity to express remorse and declined to do so. The transcript from the sentencing hearing reflects that the trial court advised the defendant that he should have apologized for his actions.

In *Mitchell v. United States*, 526 U.S. 314, 330 119 S. Ct. 1307 (U.S. 1999), the United States Supreme Court concluded that holding a defendant's silence against him in determining the facts of the offense at the sentencing hearing imposed an impermissible burden on the exercise of the constitutional right against compelled self-incrimination. Here, when the court set the defendant's sentence, it mentioned the defendant's "attitude throughout" the case. However, the trial court's statements during the hearing for the motion for new trial make it clear that it did not consider the defendant's silence in setting his sentence. The trial court set the defendant's sentence at the maximum in the range based on his prior criminal history and the circumstances of the case. We conclude that the trial court's statements regarding the defendant's decision not to testify during the sentencing hearing were harmless because they were not factored into the setting of the defendant's sentence.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgment from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE

-7-