# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## FEBRUARY 1998 SESSION

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9707-CC-00243 |
| Appellee, | ) | |
| | ) | GIBSON COUNTY |
| VS. | ) | |
| | ) | HON. DICK JERMAN, JR., |
| SHANE PILLOW, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Second-Degree Murder and |
| | ) | Aggravated Assault) |

FOR THE APPELLANT:

**JERALD M. CAMPBELL, JR.**
-and-
**L. L. HARRELL, JR.**
N.W. Court Sq.
Trenton, TN  38382

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter
425 Fifth Ave., North
Nashville, TN  37243-0497

**ELIZABETH T. RYAN**
Asst. Attorney General
425 Fifth Ave., North
Nashville, TN  37243-0493

**CLAYBURN L. PEEPLES**
District Attorney General
110 College St., Suite 200
Trenton, TN  38382-1841

**GARRY G. BROWN**
Asst. District Attorney General
110 College St., Suite 200
Trenton, TN  38382-1841

OPINION FILED: _____

**AFFIRMED**

**JOHN H. PEAY,**
Judge

# OPINION

The defendant was convicted of second-degree murder and aggravated assault. The trial court sentenced him to twenty-three years confinement for second-degree murder and five years confinement for aggravated assault, to run concurrently. In this appeal as of right, the defendant presents the following issues for review:

> I. whether the evidence contained in the record is insufficient, as a matter of law, to support his convictions;
>
> II. whether the trial court erred by denying his motion to suppress statements made to law enforcement officers;
>
> III. whether the trial court abused its discretion by permitting the State to reopen its case-in-chief to identify the victim's body;
>
> IV. whether the sentence imposed by the trial court is excessive; and
>
> V. "whether any other reversible error was committed by the trial court."

Finding no merit in the defendant's contentions, we affirm.

According to the record, the defendant, Brian Dunn (co-defendant), and the two victims, Robert Reynolds and Donnie Box, had attended school together. The defendant described Dunn, Reynolds, and Box as his closest friends. According to the defendant, he had frequently smoked marijuana and "huffed paint"[1] with them.

On March 21, 1996, the defendant, Dunn, Reynolds, and Box had contact with each other several times during the day. Around 9 a.m., the defendant went to Reynolds' home and tried to get him to go somewhere with him, but Reynolds declined. Later that day, the defendant tried to track down Reynolds at a friend's house. When Reynolds returned the defendant's call, they discussed a set of drums they jointly owned. Although the drums were at the defendant's house, the defendant told Reynolds he had sold them and had Reynolds' share of the profit. Reynolds told the defendant he and Box

---

[1] "Huffing paint" was described as spraying gold spray paint into a bag and inhaling the vapors in order to "get high."

would be at the defendant's house in a few minutes to pick up the money. The defendant told Reynolds he might not be home when Reynolds and Box arrived, but Reynolds replied he was coming to his house anyway. When Reynolds and Box arrived, the defendant would not answer the door. Reynolds and Box drove down the road, only to return a few minutes later to find the defendant driving out of his driveway. The defendant promised Reynolds that if he followed him, he would give him his share of the profit. Reynolds followed him to Dunn's house, but when he demanded his money, the defendant refused. Reynolds then left.

When Reynolds later learned the defendant had not sold the drums, he and Box began searching for him. When they found him and Dunn, Reynolds again demanded his money. The defendant told Reynolds and Box to follow him to his house. On the way there, the defendant pulled to the side of the road and tried to get Reynolds to get in his car. Reynolds would not and instead continued to drive with Box towards the defendant's house. When the defendant flashed his lights, Reynolds and Box pulled to the side of the road. Telling Reynolds he had some money with him, the defendant enticed Reynolds to get in his car. Meanwhile, Dunn exited the defendant's car and began talking with Box. After Reynolds entered the defendant's car, the defendant stabbed him in the abdomen, penetrating his liver and bile duct. Reynolds then pinned the defendant behind the steering wheel, used his elbow to blow the car horn, escaped from the defendant's car, and ran to Box's car. The car horn had alerted Box, who began walking towards the defendant's car, even though Reynolds warned against it. The defendant exited his vehicle and stabbed Box in the middle of his chest. Box turned and ran away. When Box failed to return, Reynolds drove to a relative's home where he could get help.

Meanwhile, the defendant and Dunn had found Box, who was still breathing. They placed Box in the trunk of the defendant's car, took him to a bridge spanning the

Rutherford Fork of the Obion River, and pushed him into the river. The defendant and Dunn then fled the state of Tennessee. The next day, they surrendered themselves to law enforcement officers in Indianola, Mississippi, who contacted the Gibson County Sheriff's Department in Tennessee. Deputies from the Gibson County Sheriff's Department traveled to Indianola with the defendant's and Dunn's fathers.

When the Gibson County deputies arrived in Indianola, they examined the defendant's car. They found the murder weapon and a larger knife on the front seat of the car. Blood was found on the back bumper and on a plastic tarpaulin in the trunk. The defendant gave several statements to Lt. Jimmy Hand of the Gibson County Sheriff's Department. He told him that he had stabbed Reynolds. He also admitted stabbing Box, even though Box did nothing to threaten him. He said that he and Dunn chased Box after he ran away, and when they found him, he was still breathing. He then identified the bridge where they pushed Box into the river. Box's body was later found in the Obion River near the bridge the defendant identified. The autopsy of Box's body revealed he was alive when he was pushed into the river, even though the stab wound penetrated his heart. The cause of death, however, was attributed to the stab wound, not to drowning.

## I.

The defendant first challenges the sufficiency of the evidence with regards to his conviction for second-degree murder. When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." T.R.A.P. 13(e). This Court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn from circumstantial evidence by the trier of fact. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences

4

which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, and the factual issues raised by the evidence are resolved by the trier of fact, not this Court. Id. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden of illustrating to this Court why the evidence is insufficient to support the verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court will not disturb a verdict of guilt on a sufficiency challenge unless the facts in the record are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. Id.

Under the facts of the instant case, the State had to prove beyond a reasonable doubt that the defendant knowingly killed Box. T.C.A. § 39-13-210. Reynolds testified that Box and the defendant had met between the two cars. He did not see the defendant stab Box, but he heard Box exclaim, "Oh, s---, Shane," and he saw Box run from the defendant. The defendant admitted in his confession that he had stabbed Box, even though Box had not threatened or attempted to harm him. The autopsy revealed the stab wound was in the middle of Box's chest and the knife penetrated his heart. Although Box was thrown into the river while he was still alive, the cause of death was the stab wound.

To contrast, the defendant testified during the trial his confessions were false and that he and Dunn had agreed to tell three different stories. He also testified Dunn killed Box. The jury obviously rejected this testimony, which was their prerogative

5

in evaluating each witness's credibility. See Cabbage, 571 S.W.2d at 835. The evidence was sufficient beyond a reasonable doubt to support the jury's verdict that the defendant knowingly killed Box. T.R.A.P. 13(e); Jackson v. Virginia, 443 U.S. 307 (1979). Therefore, the defendant's argument is without merit.

## II.

Next, the defendant contends the trial court reversibly erred by denying his motion to suppress three statements made to Gibson County deputy sheriffs. He predicates his argument upon Tennessee Rules of Juvenile Procedure 7 and 30. He also argues he did not knowingly and voluntarily waive the rights afforded by Miranda v. Arizona, 384 U.S. 436 (1966). The State counters that the Tennessee Rules of Juvenile Procedure are inapplicable here because the defendant was tried as an adult. The State also contends the defendant knowingly and voluntarily waived his Miranda rights.

The defendant's reliance upon the Rules of Juvenile Procedure is misplaced. The Rules of Juvenile Procedure apply to judicial proceedings in a juvenile court and have no applicability where, as here, the juvenile is transferred to a court of original jurisdiction with criminal jurisdiction for trial as an adult. See State v. Lundy, 808 S.W.2d 444, 446 (Tenn. 1991); Colyer v. State, 577 S.W.2d 460, 462 (Tenn. 1979); State v. Turnmire, 762 S.W.2d 893, 896 (Tenn. Crim. App. 1988). Thus, the defendant's reliance on the Rules of Juvenile Procedure will not afford him relief on appeal.

Moreover, the record is clear that the defendant knowingly and voluntary waived his Miranda rights prior to giving his statements to the police. When determining whether an accused has voluntarily and knowingly waived the Miranda rights, this Court must consider the totality of the circumstances existing when the accused waived these rights. State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992); Lundy, 808 S.W.2d at 446. This includes the defendant's age, education, mental competence and ability,

6

and the facts surrounding the waiver of these rights. <u>Benton</u>, 759 S.W.2d 427, 431-32 (Tenn. Crim. App. 1988). No single factor is conclusive; rather, it is the cumulative effect of these factors that is significant in determining whether the accused voluntarily waived his rights. <u>Id.</u> at 431.

Here, the day after the incident, Lt. Hand interviewed the defendant in the sheriff's department in Indianola. The interview lasted just over two hours, beginning at 9:30 p.m. and ending at 11:35 p.m. Deputy Norvell and the defendant's father were present during every interview with the defendant. Lt. Hand advised the defendant of his <u>Miranda</u> rights. The defendant told Lt. Hand he understood these rights and was willing to waive them. The defendant and his father signed a waiver of rights form. On several occasions, Lt. Hand told the defendant he was entitled to a lawyer and that he could stop answering questions at any time, but the defendant repeatedly stated he did not want to confer with a lawyer or have a lawyer present. Lt. Hand took a recorded statement from the defendant and then told the defendant to give a written statement of what occurred. The defendant complied. Not believing the defendant's statement, Lt. Hand asked the defendant if he would give him a third statement. Again, the defendant complied, stating he would give a truthful statement.

Prior to trial, the defendant moved to suppress these statements. In denying the defendant's motion, the trial court noted that the totality of the circumstances indicated the defendant knowingly and voluntarily waived his constitutional rights and freely and voluntarily gave these three statements to the police. During trial, the State introduced these three statements into evidence.

Based on the totality of these circumstances, we agree with the trial court that the defendant was fully advised of his <u>Miranda</u> rights before he knowingly and voluntarily chose to waive those rights. See <u>State v. Van Tran</u>, 864 S.W.2d 465, 472

7

(Tenn. 1993); Middlebrooks, 840 S.W.2d at 326; State v. Gordon, 642 S.W.2d 742, 745 (Tenn. Crim. App. 1982). Accordingly, the defendant's argument that the trial court should have granted his motion to suppress must fail.

The defendant also argues that the trial court erred in allowing a fourth statement given to Deputy Currie to be used to impeach his trial testimony. We treat this argument as waived, however, by the defendant's failure to cite any supporting authority. T.R.A.P. 27(a)(7); Rules of the Court of Criminal Appeals of Tennessee 10(b); State v. Killebrew, 760 S.W.2d 228, 231 (Tenn. Crim. App. 1988).

**III.**

Next, the defendant contends the trial court committed reversible error by permitting the State to reopen its case-in-chief to identify the body recovered from the river as Donnie Box's body. When the State rested its case-in-chief, the defendant moved for judgment of acquittal on the ground the State failed to prove Box was in fact dead. The defendant argued a body was found in the Rutherford Fork of the Obion River, but it was never identified as Box's body. The district attorney general stated he had an agreement with defense counsel that the identity of the body was not required and that the entire evidence of the chain of custody of the body, including identification of the body by Box's father, would be stipulated. On the other hand, defense counsel stated he believed it was only the testimony of the ambulance personnel who took Box's body to the coroner in Memphis that would be stipulated. The trial court found there was an agreement, but that counsel misunderstood the scope of the argument. The court granted the district attorney general's motion to reopen the State's case-in-chief in order to establish the body recovered from the river was that of Box. The State did so.

While "[t]here must be an end of the calling of witnesses at some time," Hughes v. State, 126 Tenn. 40, 78, 148 S.W. 543, 552 (1912), the State may be granted

8

permission to reopen its case immediately after it has rested, State v. Harrington, 627 S.W.2d 345, 348 (Tenn. 1981); White v. State, 497 S.W.2d 751, 754 (Tenn. Crim. App. 1973). For instance, on occasion, the State may need to reopen its case-in-chief because the district attorney general failed to prove an essential element or introduce relevant evidence due to an oversight. See, e.g., Harrington, 627 S.W.2d at 348; White, 497 S.W.2d at 754. The State's motion to reopen its case-in-chief for the purpose of introducing additional evidence addresses itself to the sound discretion of the trial court. Harrington, 627 S.W.2d at 348; Hughes, 126 Tenn. at 74-75, 148 S.W. at 552; State v. Tuttle, 914 S.W.2d 926, 931 (Tenn. Crim. App. 1995); White, 497 S.W.2d at 754. An appellate court will not interfere with the exercise of this discretion unless clear abuse appears on the face of the record. Tuttle, 914 S.W.2d at 931; State v. Bell, 690 S.W.2d 879, 882 (Tenn. Crim. App. 1985); White, 497 S.W.2d at 754.

Here, the record clearly reflects the district attorney general and defense counsel entered into an agreement, but that there was an honest disagreement regarding the scope of the agreement. A miscarriage of justice would have resulted if the State's motion to reopen its case-in-chief had been denied. For these reasons, the trial court did not abuse its discretion by permitting the State to reopen its case-in-chief in order to prove the victim's identity.

**IV.**

The defendant contends the sentences imposed by the trial court are excessive. He argues the trial court erred by using certain enhancement factors and refusing to apply certain mitigating factors.

The trial court applied six enhancement factors in determining the length of the defendant's sentences: (a) the offense involved more than one victim, T.C.A. § 40-35-114(3); (b) the defendant treated or allowed the victim to be treated with extreme

9

cruelty, T.C.A. § 40-35-114(5); (c) the defendant has a previous history of an unwillingness to comply with the conditions of a sentence involving release into the community, T.C.A. § 40-35-114(8); (d) the defendant had no hesitation about committing a crime when the risk to human life was high, T.C.A. § 40-35-114(10); (e) the defendant was on probation for a former felony conviction, T.C.A. § 40-35-114(13); and (f) the defendant was adjudicated to have committed a delinquent act or acts as a juvenile which would have constituted a felony if committed by an adult, T.C.A. § 40-35-114(20).

The defendant contends the trial court should not have used enhancement factor (5), the defendant treated or allowed the victim to be treated with extreme cruelty. T.C.A. § 40-35-114(5). This enhancement factor is not an element of either second-degree murder or aggravated assault. Moreover, the record reflects the defendant and Dunn put Box in the trunk of the defendant's car and transported him to the bridge spanning the Rutherford Fork of the Obion River. Box was near death and should have been taken to a hospital. Although both the defendant and Dunn were aware Box was still alive, they pushed him into the river and then fled the jurisdiction. This conduct was extremely cruel. This subissue is without merit.

Next, the defendant contends the trial court erroneously applied enhancement factor (8), the defendant has a previous history of an unwillingness to comply with the conditions of a sentence involving release into the community. T.C.A. § 40-35-114(8). When sentencing the defendant, the trial court stated on the record that it was relying upon the presentence report. However, the record on appeal does not contain the presentence report, which makes it impossible for this Court to conduct an appropriate de novo review of this issue pursuant to T.C.A. § 40-35-401(d) or determine whether the trial court erred. State v. Hayes, 894 S.W.2d 298 (Tenn. Crim. App. 1994). Instead, this Court must conclusively presume that the trial court correctly used this enhancement factor to enhance the defendant's sentences. State v. Coolidge, 915

10

S.W.2d 820, 826-27 (Tenn. Crim. App. 1995); State v. Embry, 915 S.W.2d 451 (Tenn. Crim. App. 1995); State v. Locust, 914 S.W.2d 554, 557 (Tenn. Crim. App. 1995).

Next, the defendant contends the trial court erroneously applied enhancement factor (10), the defendant had no hesitation about committing a crime when the risk to human life was high. T.C.A. § 40-35-114(10). This Court has previously held this factor is not applicable in second-degree murder cases, State v. Butler, 900 S.W.2d 305, 313-14 (Tenn. Crim. App. 1994), or aggravated assault cases, State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994). Thus, the trial court erred in using this factor to increase the defendant's sentences.

` Although the defendant does not challenge the use of enhancement factor (3), the offense involved more than one (1) victim, T.C.A. § 40-35-114(3), the State correctly states in its brief this factor may not be used to enhance the defendant's sentences. In this case there were two victims, but the defendant was convicted of committing a crime against each victim. The appellate courts have consistently held enhancement factor (3) may not be used to enhance a sentence under these circumstances. State v. Freeman, 943 S.W.2d 25, 31 (Tenn. Crim. App. 1996); State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995); State v. Clabo, 905 S.W.2d 197, 206 (Tenn. Crim. App. 1995). Thus, the trial court erred in using this factor to increase the defendant's sentences.

The defendant also does not challenge the use of enhancement factor (13), that the felonies here were committed while the defendant was on probation from a prior felony conviction. T.C.A. § 40-35-114(13)(C). It appears clear from the record that the defendant was on probation for a juvenile offense, not a felony conviction, when he committed the instant crimes, thus rendering enhancement factor (13) inapplicable. Thus, the trial court also erred in using enhancement factor (13) to increase the

11

defendant's sentences.

There are certain enhancement factors that the trial court did not apply, even though they are supported by the record. The defendant testified he smoked marijuana frequently and sold drugs on occasion. Each time the defendant possessed or sold drugs constituted criminal behavior.[2] See State v. Keel, 882 S.W.2d 410, 419 (Tenn. Crim. App. 1994). Thus, the trial court should have applied enhancement factor (1), the defendant had a previous history of criminal convictions or criminal behavior. T.C.A. § 40-35-114(1). Additionally, the defendant used a deadly weapon, a knife, to kill Box. Since the use of a deadly weapon is not an element of second-degree murder, the defendant's sentence for second-degree murder should have been enhanced pursuant to enhancement factor (9), the defendant possessed a deadly weapon during the commission of the crime. T.C.A. § 40-35-114(9); Butler, 900 S.W.2d at 312-13; Sills v. State, 884 S.W.2d 139, 145 (Tenn. Crim. App. 1994).

The trial court applied one mitigating factor, finding that the defendant lacked substantial judgment in committing the offenses due to his young age, which was seventeen. T.C.A. § 40-35-113(6). The defendant argues the trial court should have also considered the following mitigating factors: (a) he acted under strong provocation, T.C.A. § 40-35-113(2); (b) substantial grounds existed which tended to excuse or justify the defendant's criminal conduct although it failed to establish a defense, T.C.A. § 40-35-113(3); and (c) he committed the offenses under such unusual circumstances that it is unlikely there was a substantial intent to violate the law which motivated his conduct. T.C.A. § 40-35-113(11). We disagree.

This entire matter began when the defendant lied to Reynolds by telling him

---

[2]Apparently, the defendant also had several convictions as a juvenile. However, this Court cannot consider these convictions since the presentence report has not been included in the record. Embry, 915 S.W.2d at 451.

12

he had sold the drum set. The defendant then antagonized Reynolds by repeatedly refusing to give him his share of profits from the "sale." The defendant continued to provoke Reynolds by arguing with him about profits from a sale that did not even occur. Moreover, there is no question the defendant was always the aggressor. He attempted to get Reynolds to go somewhere with him early that morning, and later, he tried to get Reynolds to ride with him in his car. Reynolds refused to do so. The defendant flashed his lights to entice Reynolds and Box to pull to the side of the road. The defendant stabbed both Reynolds and Box for no apparent reason. Given these circumstances, the trial court properly refused to apply the three mitigating factors advanced by the defendant.

In sum, while there were some enhancement factors the trial court should not have used to enhance the defendant's sentences, there were other factors the trial court should have used to enhance his sentences. Further, the trial court properly applied the only mitigating factor it could under the circumstances of this case, i.e., that the defendant lacked substantial judgment in committing the offenses due to his young age. See T.C.A. § 40-35-113(6). Thus, we find no error with the sentences imposed by the trial court.

## V.

The defendant has presented an issue captioned "[w]hether any other reversible error was committed by the trial court," under which he presents five separate arguments. Although this Court does not favor the lumping of several unrelated issues within a single issue, see State v. Williams, 914 S.W.2d 940, 947-48 (Tenn. Crim. App. 1995), each argument will be addressed in turn.

## A.

The defendant sought to introduce two photographs. One photograph

13

depicted a confederate flag and the other photograph depicted a Nazi swastika. The defendant contended that Dunn had painted these insignias on the bridge where Box was pushed into the Obion River. The trial court did not abuse its discretion in ruling the photographs should be excluded as evidence. See State v. Bowers, 744 S.W.2d 588, 590 (Tenn. Crim. App. 1987). This evidence was not relevant to any issue to be resolved by the jury, and the prejudicial effect of admitting this evidence would far outweigh the probative value, if any, of the photographs. See State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978). Furthermore, this argument has been waived, as the defendant has failed to cite any supporting authority. T.R.A.P. 27(a)(7); Rules of the Court of Criminal Appeals of Tennessee 10(b).

## B.

The defendant contends the trial court erred by denying "his pre-trial motion for funds for a [private] clinical psychologist." We find no reversible error because the defendant failed to comply with State v. Barnett, 909 S.W.2d 423 (Tenn. 1995). Moreover, this argument has been waived for failure to cite authority. T.R.A.P. 27(a)(7); Rules of the Court of Criminal Appeals of Tennessee 10(b).

## C.

The defendant contends the trial court erred by denying his motions for a judgment of acquittal on the first-degree murder charge and by instructing the jury on the offense of first-degree murder. This issue is moot because the jury returned a verdict of second-degree murder. See State v. Robert E. Sanderson, No. 01C01-9308-CR-00269, Davidson County (Tenn. Crim. App. filed September 27, 1995, at Nashville). Additionally, this argument has been waived for failure to cite authority. T.R.A.P. 27(a)(7); Rules of the Court of Criminal Appeals of Tennessee 10(b).

14

**D.**

The defendant contends the trial court erred in denying two motions for continuance. Whether a continuance should be granted rests within the sound discretion of the trial court. Mandina v. State, 749 S.W.2d 472, 473 (Tenn. Crim. App. 1985); State v. Lambert, 741 S.W.2d 127, 131 (Tenn. Crim. App. 1987). This Court will not interfere with the exercise of this discretion absent clear abuse appearing on the face of the record. Moorehead v. State, 219 Tenn. 271, 409 S.W.2d 357, 358 (1966). Here, the defendant has failed to show clear abuse of discretion.

**E.**

Finally, the defendant contends that under T.C.A. § 37-1-133(b), the trial court erroneously allowed the assistant district attorney general to question him during the sentencing hearing about his prior juvenile court proceedings and that the trial court improperly used this evidence to enhance his sentence. The defendant's reliance upon § 37-1-133(b) is misplaced. Section 37-1-133(b) states, "The disposition of a child and evidence adduced in a hearing in juvenile court may not be used against such child in any proceeding in any court other than a juvenile court, whether before or after reaching majority, except in dispositional proceedings after conviction of a felony for the purposes of a pre-sentence investigation and report." However, while evidence of juvenile convictions is not admissible during the guilt phase of a criminal case, State v. Davis, 741 S.W.2d 120, 123 (Tenn. Crim. App. 1987), this Court has held that "a juvenile record of criminal conduct may properly be considered in assessing a suitable sentence upon a felony conviction by an adult." State v. Stockton, 733 S.W.2d 111, 112-13 (Tenn. Crim. App. 1986). The defendant's argument lacks merit.

**CONCLUSION**

Each issue raised by the defendant is without merit. The judgment of the trial court is affirmed.

_____
JOHN H. PEAY, Judge

15

CONCUR:


(Not participating)*_____
JOE B. JONES, Judge


_____
THOMAS T. WOODALL, Judge


*Judge Joe B. Jones died May 1, 1998, and did not participate in this opinion. We acknowledge his faithful service to this Court, both as a member of the Court and as its Presiding Judge.